Aurora H. ALVARADO, et al., Petitioners,

v.

CITY OF LUBBOCK, Respondent.

No. C–3159.

Supreme Court of Texas.

March 6, 1985.

Templeton & Garner, Nancy J. Stone and Robert E. Garner, Sanders, Kiser & Baker, Herman Jesko and Van Northern, Amarillo, for petitioners.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for respondent.

RAY, Justice.

This appeal arises from a wrongful death lawsuit brought by several members of the Alvarado family against the City of Lubbock and others as a result of an accident that took the life of Samuel Alvarado. At issue is whether the summary judgment evidence conclusively supports the trial court's rendition of summary judgment for the City. The court of appeals, in an unpublished opinion, Tex.R.Civ.P. 452, affirmed the trial court judgment. We reverse the judgments of the courts below and remand the cause to the trial court for a trial on the merits.

The accident in question occurred on May 8, 1978 at the intersection of Southeast Drive and 50th Street in Lubbock, Texas. Southeast Drive at that location is State Highway FM 835. Alvarado was a passenger in a car proceeding westbound on 50th Street that was hit by an automobile travelling southbound on Southeast Drive. At that time, the speed limit on the southbound lane of Southeast Drive just north of 50th Street was posted at 55 mph. The actual speed limit, however, as provided by a city ordinance, was 50 mph. Thus, the Alvarados assert that the City was negligent in failing to post an accurate sign.

The trial court granted summary judgment for the City. The court of appeals affirmed, reasoning that the Alvarados' pleadings contained an admission that the State possessed exclusive control of Southeast Drive and that uncontroverted deposition testimony presented as summary judgment evidence further supported this conclusion. Consequently, that court held that the City owed no duty to Samuel Alvarado with respect to the erroneous sign.

■ The court of appeals held that the following statement made by the Alvarados in their pleadings constituted an admission: "the STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION COMMISSION assumed the duty of maintenance of such highway in question on or before January 1, 1974." Immediately preceding this statement in the pleadings, however, the Alvarados allege that the City committed negligence in lowering the speed limit without replacing the sign to reflect this change. Also, immediately

following the statement, the pleadings continue:

> [t]he State Department of Highways and Public Transportation Commission, therefore, has breached the same duties which the City of Lubbock has breached in failing to maintain the speed limit signs as set out in the foregoing paragraphs, and because of the absence of a clear, definitive agreement between such parties, both Defendants, the City of Lubbock and the State Department of Highways and Public Transportation Commission, have breached duties owed to Plaintiffs.

Rule 45, Tex.R.Civ.P., provides that "[a]ll pleadings shall be so construed as to do substantial justice." This requires a court to read the pleadings as a whole and examine each statement in its proper context before determining that a party made an admission. Here, it is clear that the Alvarados allege that the State Department of Highways *and* the City were jointly responsible for the maintenance of the speed limit signs on Southeast Drive. Consequently, the court of appeals erred in construing the statement as an admission.

■ The deposition testimony relied upon by the court of appeals to affirm the trial court's summary judgment was that of Bill McDaniel, the Traffic Engineering Director for the City of Lubbock. McDaniel testified that the City once was responsible for the upkeep of the sign, but that this duty shifted to the State after his 1973 telephone conversation with George Wall, a district engineer for the State Highway Department. During this telephone call, McDaniel and Wall agreed that the State would assume the maintenance of speed limit signs on state highways in Lubbock. Tex.Rev.Civ.Stat.Ann. article 6673b (Vernon 1977),[1] however, only permits a city's governing body and the State Highway Commission to enter into agreements involving the maintenance of state highways.

*See Hale v. City of Dallas*, 335 S.W.2d 785 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r. e.). Thus, an oral agreement between these two engineers is not sufficient to alter the responsibility over the maintenance of speed limit signs.

■ The City further claims that certain Texas statutes mandate exclusive state control over the maintenance of speed limit signs on state highways. *See* articles 6701d, § 30 and 6701f (Vernon 1977). While the state does exercise control over the maintenance of speed limit signs on state highways, this control is not necessarily exclusive. *See* article 6674w–5 (Vernon 1977). For example, article 6701d, § 169(b) (Vernon 1977)[2] expressly grants cities the power to alter speed limits. In fact, the city ordinance which lowered the speed limit in question from 55 mph to 50 mph specifically referred to this statute. Thus, in the absence of a valid agreement between the State Highway Commission and the City delegating exclusive responsibility for the maintenance of speed limit signs to the State, the City cannot conclusively prove that it owed no duty to Samuel Alvarado with respect to the erroneous sign.

■ Finally, the City argues that the Texas Tort Claims Act, article 6252–19 (Vernon 1970 and Vernon Supp.1985), precludes the Alvarados' cause of action because the Act provides no exception to the City's governmental immunity and that the Alvarados failed to comply with the Act's notice requirement, article 6252–19, § 16 (Vernon 1970). We disagree. Section 14(12) excepts from the Act's ambit:

> [a]ny claim arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device unless such absence, condition or malfunction shall not be corrected by the

---

**1.** All further reference to Tex.Rev.Civ.Stat.Ann. will be to the specific article.

**2.** Article 6701d, § 169(b) in part provides:

> The governing body of an incorporated city ... with respect to any highway ... including ... a highway of the State Highway System, within its corporate limits, shall have the same authority by city ordinance to alter maximum prima facie speed limits ... as that delegated to the State Highway Commission....

governmental unit responsible within a reasonable time after notice.

This cause involves the absence of or condition of a traffic sign, so the City can be held liable unless it did not have notice of the erroneous sign. The summary judgment evidence, however, does not conclusively establish that the City was without notice of the discrepancy between the posted sign and the actual speed limit. To the contrary, the summary judgment evidence included several city traffic citations and Lubbock police accident reports explicitly noting the difference between the posted speed limits on either side of Southeast Drive. Thus, a fact question exists on whether the City received notice of the erroneous sign. In section 16, the Texas Tort Claims Act requires parties to give notice of their claim within six months of the incident, unless the governmental unit has actual notice of the death or injury. The determination of whether the City had actual notice of Samuel Alvarado's death is also a fact question. *Lorig v. City of Mission*, 629 S.W.2d 699, 701 (Tex.1982). Furthermore, six of the Alvarados are minors and section 16 does not apply to them. *City of Houston v. Torres*, 621 S.W.2d 588, 591 (Tex.1981).

In conclusion, the City's summary judgment proof is insufficient to conclusively establish that it owed no duty to Samuel Alvarado with respect to the erroneous sign. Also, fact questions exist pertaining to the notice requirements found in article 6252–19, §§ 14(12) and 16 (Vernon 1970). Accordingly, we reverse the judgment of the court of appeals and remand this cause to the trial court for a trial on the merits.