**TEXAS DEPARTMENT OF TRANSPORTATION,**
Petitioner,

v.

**Jesus GARZA and Maria Elena Garza,
individually and as personal represen-
tatives of The Estate of Rolando
Garza, deceased, Respondents.**

No. 00–0948.

Supreme Court of Texas.

Argued Oct. 2, 2001.

Decided Jan. 24, 2002.

Act, which waives the sovereign immunity of governmental units for claims of "personal injury and death so caused by a condition or use of tangible personal or real property." *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2). Specifically, we must decide whether a sign that accurately reflects the legal speed limit, even though the plaintiff believes that limit was too high considering the sign's proximity to a school zone, falls within this waiver provision. The court of appeals held that immunity was waived because a forty-five mile-per-hour speed-limit sign's location near a school zone was a condition that should have been corrected by the State under section 101.060(a)(2), which permits waiver of sovereign immunity for the absence, condition, or malfunction of a road sign if it is not corrected by the responsible governmental unit within a reasonable time after notice. 72 S.W.3d 369; *see also* TEX. CIV. PRAC. & REM.CODE § 101.060(a)(2). We hold that the plaintiffs' allegations do not come within the Tort Claims Act's waiver of sovereign immunity for a "condition" of a traffic sign. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the case for lack of subject-matter jurisdiction.

Kyle S. Duncan, Office of Atty. Gen., Margarita Manzano Corbett, Asst. Atty. Gen., John Cornyn, Atty. Gen., Jeffrey S. Boyd, Office of Atty. Gen., Austin, for Petitioner.

Julie Caruthers Parsley, Office of the Solicitor General of Texas, Austin, for Petitioner.

Armando Duran, Alberto Rincones, Jr., Dallas, for Respondent.

RODRIGUEZ, Justice.

In this case we once again construe section 101.021(2) of the Texas Tort Claims

## I. Facts

On September 26, 1988, Rolando Garza was struck and killed by a car while waiting to cross Business Highway 83 in Hidalgo County, Texas. Rolando stopped on the north shoulder of the highway at about 7:35 a.m. and waited for traffic to clear so that he could cross the street to attend Alamo Junior High School. He was standing about 500 feet west of the Alamo city limits and about 1,100 feet from the school property. The posted school zone was over 1,000 feet from where Rolando stood

and the speed limit was forty-five miles per hour. While Rolando waited on the shoulder, a motorist traveling west passed another westbound motorist and, upon returning to her lane, lost control of her vehicle and veered off the road, striking and killing Rolando.

Jesus and Maria Elena Garza, Rolando's parents, sued the Texas Department of Transportation (TxDOT) and others for wrongful death, alleging six negligent acts and omissions: (1) failure to initially place road signs designating the area as part of a school zone; (2) failure to initially place road signs in the vicinity of the school setting a reasonable speed limit during school hours; (3) failure to correct the absence, condition, or malfunction of road signs within a reasonable time after notice was given; (4) failure to hold a public hearing to consider the speed limit in the school zone; (5) failure to notify certain parties of the need for signs designating the area as a school zone; and (6) failure to notify certain parties of the need for signs setting a reasonable speed limit during school hours. TxDOT moved for summary judgment based on sovereign immunity. The trial court granted the motion, and the Garzas appealed.

The court of appeals affirmed all aspects of the trial court's judgment except that relating to the Garzas' third allegation—that, with regard to the forty-five mile-per-hour speed limit sign, TxDOT failed to correct the absence, condition, or malfunction of a road sign within a reasonable time after notice. *See* TEX. CIV. PRAC. & REM.CODE § 101.060(a)(2). Although section 101.021(2) waives immunity for death and personal injury caused by a condition of real or personal property, section 101.060(a)(2) retains the State's sovereign immunity for a claim based on the absence,

condition, or malfunction of a road sign unless the governmental unit failed to correct the absence, condition, or malfunction within a reasonable time after receiving notice. *See id.* § 101.060(a)(2). Because the Garzas had not alleged that the sign was absent or had malfunctioned under section 101.060(a)(2), the court of appeals framed the issue as "whether the sign[] present[ed] a 'condition' that should have been corrected." *Garza v. State,* 878 S.W.2d 671, 675 (Tex.App.-Corpus Christi 1994, no writ) (*Garza I* ). Indulging every reasonable inference in favor of the Garzas, the court of appeals held that: (1) the forty-five mile-per-hour speed-limit sign's location near a school zone was a "condition" that should have been corrected by the State within section 101.060(a)(2); (2) the Garzas had sufficiently alleged that TxDOT acted negligently in failing to correct the absence, condition, or malfunction of a traffic or road sign within a reasonable time after receiving notice; and (3) TxDOT, which had the burden of proof, failed to refute the applicability of section 101.060(a)(2) in its motion for summary judgment. *Id.* at 675–76. Accordingly, the court of appeals, sitting en banc, reversed summary judgment on the claim and remanded to the trial court for further proceedings. *Id.* at 676. Two Justices dissented, arguing that the Garzas' complaint about the speed limit lacked any contention regarding the "condition" of the sign under section 101.060(a)(2), but rather alleged that a different speed limit should have been posted. *Id.* at 677–78 (Dorsey, J., dissenting).

On remand, TxDOT filed a motion to dismiss for lack of jurisdiction, reasserted sovereign immunity, and specifically denied the applicability of section 101.060(a)(2). The trial court denied the motion, and TxDOT appealed (*Garza II* ).

See Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) (Vernon Supp.2001) (allowing interlocutory appeal from order denying a governmental unit's plea to the jurisdiction). In *Garza II*, TxDOT argued that the court of appeals' language construing the term "condition" in *Garza I* was dicta because the court was deciding only whether TxDOT had met its summary judgment burden and that the "condition" discussion was unnecessary to determine that issue. The *Garza II* court rejected this argument, restated its language from *Garza I*, and affirmed the trial court's denial of TxDOT's plea to the jurisdiction. 72 S.W.3d at 369. We granted TxDOT's petition for review.

## II. Jurisdiction

■ We have jurisdiction over this interlocutory appeal if we determine that the court of appeals held differently from a prior decision of another court of appeals or of this Court on a question of law material to the decision of the case. *See* Tex. Gov't Code §§ 22.001(a)(2), 22.225(c); *see also Coastal Corp. v. Garza*, 979 S.W.2d 318, 319 (Tex.1998). For conflicts jurisdiction to exist, "it must appear that the rulings in the two cases are 'so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other.'" *Coastal Corp.*, 979 S.W.2d at 319 (quoting *Gonzalez v. Avalos*, 907 S.W.2d 443, 444 (Tex.1995)). In other words, if one case would operate to overrule the other if both decisions were rendered by the same court, then the test for conflicts jurisdiction has been met. *Id.* at 319–20.

TxDOT argues that we have conflicts jurisdiction because the court of appeals' opinion conflicts with the Third Court of Appeals' opinion in *Bellnoa v. City of Austin*, 894 S.W.2d 821 (Tex.App.-Austin 1995, no writ). The Bellnoas' two sons were struck by a privately owned and operated truck while attempting to cross the street in Austin, Texas. *Id.* at 823. One of the sons later died of his injuries, and the Bellnoas sued the City of Austin, alleging various acts of negligence relating to the regulation of traffic, including the negligent raising of the speed limit from thirty to forty miles per hour. *Id.* at 823–25. The court of appeals found the "threshold issue" to be "whether the alleged problem resulted from the decision to increase the speed limit from 30 to 40 miles-per-hour or ... from the sign displaying that limit." *Id.* at 825. Announcing that "[t]he source of the alleged problem ... is the setting of the legal speed limit, not the sign displaying that limit," the court refused to hold, as the *Garza I* court had, that a plaintiff's claim that the City had negligently raised the speed limit presented a "condition" of the speed-limit sign for which the City could be held liable under section 101.060(a)(2). *Id.* The court of appeals criticized the *Garza I* court's reasoning as "ignor[ing] the fact that the speed limit is set by law and the posted sign is only an indicator of the legal speed limit." *Id.*

■ The court of appeals in this case expressly adopted the *Garza I* panel's reasoning. 878 S.W.2d at 671. The *Garza II* court held that "the 45 mph speed limit sign near a school zone was a condition that should have been corrected by the State" and that TxDOT's immunity from suit had been waived. *Id.* at 376. TxDOT argues that this holding conflicts with *Bellnoa*. The Garzas respond that no conflict exists because, although the *Bellnoa* court held that raising the speed limit was a discretionary decision, the court did not hold that plaintiffs could not allege that

raising the speed limit was a "condition" under section 101.060(a)(2). But *Bellnoa* and *Garza II* both dealt with claims that the respective speed-limit signs set an excessive speed for the area. *See Bellnoa,* 894 S.W.2d at 825; *Garza II,* 72 S.W.3d at 376. Thus, the question presented to both courts of appeals was whether an allegation that the established speed limit was excessive could defeat a governmental entity's sovereign immunity under the Tort Claims Act. The *Bellnoa* court said no, but the *Garza II* court answered yes. The conflict between *Garza II* and *Bellnoa* is made clear by the words of the *Bellnoa* court itself, which stated, "[W]e decline to follow the decision in [*Garza I* ], which held that a 45 mile-per-hour speed limit sign ... was a 'condition' of the sign for which the state could be held liable under section 101.060(a)(2)." *Bellnoa,* 894 S.W.2d at 825. The *Garza I* court's holding, which was expressly adopted by the *Garza II* court, would necessarily operate to overrule the *Bellnoa* court's decision if both had been rendered by the same court. Accordingly, we have jurisdiction over this case and now turn to the merits.

### III. Analysis

 TxDOT, a governmental unit, is immune from both suit and liability for Rolando Garza's death unless its immunity is waived by the terms of the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem.Code §§ 101.021, 101.025. The threshold inquiry is whether immunity has been waived under section 101.021, which states that "[a] governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). However,

there are exceptions to section 101.021(2)'s waiver provision. Even if waiver would be established under section 101.021, the State retains sovereign immunity for claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2). Additionally, the State retains its sovereign immunity from claims based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

*Id.* § 101.056. In other words, the State remains immune from suits arising from its discretionary acts and omissions. *See State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex. 1999).

 The Garzas contend that TxDOT's immunity from suit is waived because the location of the forty-five mile-per-hour speed-limit sign presents a "condition" within the meaning of the Act. To decide this issue, we must interpret the word "condition" as used in the Act. When construing a statute, we begin with the plain and common meaning of the statutory language. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999). "Condition" is not defined by the Act. However, we may look to the context of the term to determine the Legislature's intended meaning. *See Liberty Mut. Ins. Co. v. Garrison Contrac-*

*tors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998) (stating that a court "must ... view a statute's terms in context"). "Condition" is first found in the general waiver section, which states that immunity is waived for "personal injury and death so caused by a *condition* or use of tangible personal or real property." TEX. CIV. PRAC. & REM.CODE § 101.021 (emphasis added). Then, section 101.060(a)(2) retains sovereign immunity for claims arising from "the absence, *condition*, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2) (emphasis added). The Legislature's placement of "condition" in between "absence" and "malfunction," coupled with the language that recants section 101.060(a)(2)'s retention of immunity when the "condition" is "not corrected" after notice, indicates that the Legislature intended a "condition" of a sign to be not just any condition, but only something "wrong" with the traffic sign or signal such that it would require correction by the State after notice. This construction is further supported by the fact that the Legislature intended only a limited waiver of immunity in the Act. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341–42 (Tex.1998) (examining the history of the Tort Claims Act's passage and concluding that "the waiver of immunity ... is not, and was not intended to be, complete").

Indeed, in the cases in which this Court has interpreted "condition" in the context of road signs and signals, we have found a waiver of immunity only in those situations in which the sign or signal was either (1) unable to convey the intended traffic control information, or (2) conveyed traffic control information other than what was

intended. First, in *Lorig v. City of Mission*, 629 S.W.2d 699 (Tex.1982) (per curiam), trees and branches obstructed a stop sign, causing a vehicle collision. *Id.* at 700. The obstruction prevented the stop sign from conveying the intended traffic control information to motorists. Thus, we held that the sign's obstruction from view was a "condition" under the Act. *Id.* Next, in *Alvarado v. City of Lubbock*, 685 S.W.2d 646 (Tex.1985), a speed-limit sign erroneously posted a limit of fifty-five miles per hour when the actual speed limit, set by Lubbock city ordinance, was fifty miles per hour. *Id.* at 647. The Alvarados claimed that the City was negligent in failing to post an accurate sign, and the City argued immunity under the Act. *Id.* at 648. We held that the case involved "the absence of or condition of a traffic sign" under section 101.060(a)(2). *Id.* at 649. The *Alvarado* sign reported an inaccurate speed limit and thus conveyed traffic control information other than what was intended. In this case, TxDOT intended that the speed-limit sign reflect the forty-five mile-per-hour legal speed limit for the area and the sign accurately reported that information. Thus, unlike the sign in *Alvarado*, the sign in this case did not present a "condition" within the meaning of the Tort Claims Act.

Finally, in *Sparkman v. Maxwell*, 519 S.W.2d 852 (Tex.1975), we dealt with a situation in which a stop light displayed a red left-turn arrow. The City of Wichita Falls had modified a standard three-light signal by placing a metal template in front of the red, yellow and green lenses with three cut-out arrow-shaped openings. *Id.* at 854. The red arrow was intended to indicate to the motorists to whom it was directed to stop, but it confused motorists, actually causing them to proceed turning left on the red arrow, which led to an

automobile accident. *Id.* at 856. Because the red arrow in fact conveyed to some motorists that they should proceed—contrary to the City's intent to inform them to stop—the signal conveyed the wrong traffic control information, and thus presented a "condition" within the Act. In contrast, here the Garzas do not contend that the speed-limit sign conveyed information other than what the State intended. Rather, it is uncontested that TxDOT set the speed limit at forty-five miles per hour and erected a sign correctly displaying that limit. Because the sign accurately reflected the intended forty-five mile-per-hour speed limit, there would have been nothing for the State to "correct" if it had been given notice of this fact. Accordingly, under sections 101.021(2) and 101.060(a)(2), no "condition" was presented requiring corrective action by TxDOT. At most, the Garzas have alleged that TxDOT improperly set the speed limit in the area at forty-five miles per hour. In the words of the *Bellnoa* court, "the posted [speed-limit] sign is only an indicator of the legal speed limit. The source of the alleged problem ... is the setting of the legal speed limit, not the sign displaying that limit." *Bellnoa*, 894 S.W.2d at 825.

In conclusion, we have jurisdiction to decide this case based on the conflicting decisions rendered by the Third Court of Appeals in *Bellnoa* and the Thirteenth Court of Appeals in this case regarding the meaning of a "condition" of a traffic sign. The Garzas have not established that the speed-limit sign had a "condition" within the meaning of the Tort Claims Act and have failed to establish a waiver of sovereign immunity. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the case for lack of subject-matter jurisdiction.