NO. 07-03-0195-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 26, 2005

_____

DARRELL AND LINDA SEHORN, INDIVIDUALLY AND AS
LEGAL HEIRS AND REPRESENTATIVES OF THE ESTATE OF
STACEY SEHORN, SHAWN REAMS AND NAKISHA HORTON, APPELLANTS

V.

TEXAS DEPARTMENT OF TRANSPORTATION, APPELLEE
_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 32106; HONORABLE LEE WATERS, JUDGE
_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.[1]

**MEMORANDUM OPINION**

Appellants Darrell and Linda Sehorn, acting individually and on behalf of the estate

of their daughter Stacey Sehorn, Shawn Reams and Nakisha Horton appeal the dismissal

of their suit for damages against the Texas Department of Transportation. The trial court

dismissed it on the Department's plea to the jurisdiction that argued the suit was barred by

_____

[1]Johnson, C.J., not participating.

sovereign immunity. Appellants present a single point asserting the trial court's dismissal was error. We affirm the dismissal.

Stacey Sehorn died, and Shawn Reams and Nakisha Horton were injured, when the vehicle in which they were passengers ran through the intersection of Loop 171 and Texas Highway 273 south of Pampa in Gray County. The intersection is T-shaped, with southbound Loop 171 dead-ending at that point on Highway 273. Appellants' pleadings said the vehicle crossed Highway 273, impacted the ditch and became airborne, coming to rest in the adjacent pasture.

Appellants' pleadings asserted the intersection was dangerous, and drivers were not properly and adequately warned of the approaching intersection and the approaching end of the roadway. Specifically, appellants' alleged, the Department "had in place numerous signs and warning devices, which were defective in that they were not properly sized, configured, and placed." Appellants further alleged the Department had actual knowledge that the intersection was "dangerously defective," from the State's accident records showing a number of motor vehicles had failed to stop and had run through the intersection into the pasture, in the same manner as this vehicle. Appellants alleged the Department further had actual knowledge that the traffic signs and warnings in place were not performing their intended traffic control function. They alleged that the Department, despite its actual knowledge, failed to warn the public, and these motorists in particular, of the defective roadway. By failing to correct, or warn of, the dangerous intersection, appellants

pleaded, the Department breached its duty of care under Sections 101.021(2) and 101.022(a) of the Texas Tort Claims Act.[2]

Photographs introduced at the hearing on the Department's plea to the jurisdiction show traffic at the intersection at the time of the accident was controlled by a stop sign on Loop 171. Directional signs with arrows identifying Highway 273 North and South stood facing the intersection across that highway. The trial court also considered a report signed by registered professional engineer R. T. Abrahamson attached to the response appellants filed to the Department's plea to the jurisdiction. The report describes the signs that would be encountered by a southbound driver approaching the intersection.[3] It states, among other things, that the size of the stop sign "does not appear to be adequate," that the elevation of signs on the far side of the intersection was too low for normal viewing range for a southbound driver, and that the far side of the intersection did not have a large "arrow board sign." It notes also that the superelevation of Highway 273 at the intersection is such that southbound drivers on Loop 171 cannot see the pavement on Highway 273. The report further states that the "height, line of sight, size, conspicuity, legibility, and target value of the signs described do not appear to meet/exceed standards" and that "[s]outhbound drivers do not have adequate stimulus when approaching State Highway 273

---

[2]Reference to sections or the act are to Texas Civil Practice and Remedies Code Annotated (Vernon 1997) unless otherwise noted.

[3]The report also makes reference to "well worn" rumble strips that were "almost ineffective."

in darkness and/or inclement weather[4] to respond in a timely manner." The report notes the speed limit for drivers approaching the intersection was 70 mph during the day and 65 mph at night. Abrahamson's conclusions include those that the section of the highway on which the accident occurred is dangerous based on the number of incidents at the intersection involving southbound vehicles, and that revising the signage and median pavement marking provisions would significantly reduce accidents involving southbound drivers.[5]

*Standard of Review*

The Department's plea to the jurisdiction challenged the district court's subject matter jurisdiction over appellants' claims against it. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999). The existence of the court's subject matter jurisdiction is a legal question that we review *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

*Applicable Law*

The State is immune from suit for damages unless it has expressly consented to be sued. Absent the State's consent, a trial court lacks subject matter jurisdiction over a suit

---

[4]The accident report in the record gives the time of the accident as 2:45 a.m. The report indicates the weather was cloudy and the pavement was dry.

[5]Darrell Sehorn also testified at the hearing on jurisdiction. He identified photographs of the intersection depicting skidmarks and the signs in place at the intersection at the time of the accident and those later installed. He also criticized the contours of the ditch on the far side of the intersection.

-4-

against the State. *Jones*, 8 S.W.3d at 638. This immunity applies to the Department, as a state entity. *Texas Dep't of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex. 2002). *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.1 (Tex. 2003). A party suing a state entity must establish the State's consent to the suit, and may do so by reference to a statute or a resolution granting express legislative permission. *Jones*, 8 S.W.3d at 638. To waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 696.

To the extent the Texas Tort Claims Act creates liability, it waives the State's sovereign immunity from suit for tort claims. § 101.025; *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex. 2002). Section 101.021(2) of the Act provides for the liability of a Texas governmental unit for personal injury and death caused by a condition of real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. Section 101.022(a) of the Act provides that for claims arising from premise defects, the governmental unit owes the claimant only the duty a private person owes a licensee on private property, unless the claimant pays for the use of the premises.

The Act's waiver of the State's immunity is subject to exclusions and exceptions, among which are those stated in Section 101.056, excluding claims based on a governmental unit's exercise of discretionary powers, and those stated in Section 101.060, relating to traffic and road control devices.

*Analysis*

The parties' arguments on appeal center on the application of Sections 101.056 and 101.060(a) to appellants' allegations against the Department. The Department contends appellants' allegations concern the initial selection and placement of traffic control devices and the failure to modify these features, discretionary decisions for which the Department retains immunity.

Appellants seem to contend Section 101.056 does not exclude the Department's failings with respect to the intersection from the Act's waiver of immunity because Section 101.022(a) imposes on the Department the duty to make the roadway safe or warn the public of its dangerous condition. Under appellants' view, the Department therefore does not have discretion to decide whether to comply with that duty, and their allegations the Department failed to comply bring the case within the ambit of Section 101.021(2). Controlling authority compels our disagreement with appellants. The exclusion for discretionary actions under Section 101.056 applies to suits attempting to hold the Department responsible for premises defects. *See State ex rel. State Dep't of Highways and Pub. Trans. v. Gonzalez*, 82 S.W.3d 322, 325-26 (Tex. 2002); *Ramirez*, 74 S.W.3d at 866; *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999). Appellants also contend 101.056 has no application here because of the Department's knowledge of the dangerous condition of the intersection. The supreme court's application of Section 101.056 in *Ramirez* forecloses that contention. *Ramirez* involved premise defect claims that the Department had failed to correct or warn of a dangerous condition allegedly created by a highway median's slope and the absence of safety features between opposing lanes of traffic. Like

here, the plaintiff in *Ramirez* presented accident reports about similar accidents on the same section of highway to establish its dangerous condition and the Department's knowledge of the dangerous condition. In a per curiam opinion, the supreme court reversed the court of appeals, which had affirmed the trial court's denial of the Department's plea to the jurisdiction, and dismissed the claims, finding them barred by sovereign immunity. The supreme court cited Section 101.056(2) and reiterated its holding in *Rodriguez* that the design of a public work like a roadway is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions. *Ramirez*, 74 S.W.3d at 867, *citing Rodriguez*, 985 S.W.2d at 85. The court also restated its holding in *State v. Miguel* that decisions about installing safety features are discretionary decisions for which the State may not be sued. *Ramirez*, 74 S.W.3d at 867, *citing State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam) and *Maxwell v. Texas Dep't of Transp.*, 880 S.W.2d 461, 463 (Tex.App.–Austin 1994, writ denied).[6] *Ramirez* establishes that an allegation the Department knew of the dangerous condition of the intersection does not preclude the application of the discretionary function exclusion stated in Section101.056.

Appellants also assert Section 101.060(a) does not bar their suit because to the extent their claims are based on the signs and traffic control devices at the intersection,

_____

[6]The court in *Miguel* further stated: "A court should not second-guess a governmental unit's decision about the type of marker or safety device that is the most appropriate." 2 S.W.3d at 251, *citing Maxwell*, 880 S.W.2d at 464. *See also Siders v. State*, 970 S.W.2d 189, 192 (Tex.App.–Dallas 1998, pet. denied) ("Lights, signs, and safety features are part of a roadway design; therefore, the placement of stop signs and other safety features are discretionary in nature and cannot give rise to liability under the Tort Claims Act.").

they come within the language of Section 101.060(a)(2), relating to the condition of the signs and devices. They note the statement in *Gonzalez*, 82 S.W.3d at 327, that Section 101.060(a)(2) requires the State to maintain traffic signs in a condition sufficient to perform their intended traffic control function, and argue Section 101.060(a)(2) waives the Department's immunity from suit for its failure to do so here when it was on notice of the defective condition of the control devices from the numerous previous accidents. Again, controlling authority requires that we disagree.

In *Gonzalez*, the supreme court determined that a traffic sign's susceptibility to vandalism is not a "condition" of the sign under Section 101.060(a)(2). *Id.* at 328-29. The supreme court also considered the meaning of the term "condition" in *Texas Dep't of Transp. v. Garza*, 70 S.W.3d 802 (Tex. 2002). There, the court found a traffic sign that accurately stated the established speed limit did not present a "condition" of the sign within the meaning of Section 101.060(a)(2) so as to permit a suit alleging the Department was negligent in failing to correct the 45-mph speed limit near a school. *Id.* at 807. In so doing, the court stated that the "condition" of a traffic sign or signal referred to in Section 101.060(a)(2) is something "wrong" with the sign or signal. The court further summarized several prior decisions by noting it had found a waiver of immunity under the language of Section 101.060(a)(2) only when the sign or signal was unable to convey the intended traffic control information, or conveyed traffic control information other than what was intended. *Id.*

Even liberally construed, appellants' pleadings do not allege something "wrong" with the traffic control devices for southbound traffic on Loop 171 approaching its intersection

with Highway 273, in the sense case law has applied Section 101.060(a)(2).  The signs in place are not alleged to be obstructed from drivers' vision like that in *Lorig v. City of Mission*, 629 S.W.2d 699 (Tex. 1982) (per curiam), to state wrong information like the erroneous speed limit in *Alvarado v. City of Lubbock*, 685 S.W.2d 646 (Tex. 1985), or to mislead drivers like the modified red stop light with a left-turn arrow in *Sparkman v. Maxwell*, 519 S.W.2d 852 (Tex. 1975).  Nor do appellants' pleadings assert the traffic control devices were in disrepair or were not activated, like the pavement markers and school zone sign in *City of Midland v. Sullivan*, 33 S.W.3d 1 (Tex.App.–El Paso 2000, no pet.).  As noted, appellants pleaded that the signs and warning devices in place at the time of the accident were not properly sized, configured, and placed.  But it is clear from the pleadings and evidence presented here that they were sized, configured and placed in the manner selected by the Department.  The propriety of those decisions by the Department does not reflect the "condition" of the signs and devices for purposes of Section 101.060(a)(2).  *Garza*, 70 S.W.3d at 807.  Such decisions instead are the type for which the Act retains the State's immunity from suit.  *See Ramirez*, 74 S.W.3d at 867; *Texas Dep't of Transp. v. Bederka*, 36 S.W.3d 266, 271 (Tex.App.–Beaumont 2001, no pet.).

Appellants' point of error is overruled.  The trial court's judgment of dismissal is affirmed.

James T. Campbell
Justice