NO. 07-03-0195-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 26, 2005



______________________________



DARRELL AND LINDA SEHORN, INDIVIDUALLY AND AS


LEGAL HEIRS AND REPRESENTATIVES OF THE ESTATE OF


STACEY SEHORN, SHAWN REAMS AND NAKISHA HORTON, APPELLANTS



V.



TEXAS DEPARTMENT OF TRANSPORTATION, APPELLEE


_________________________________



FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;



NO. 32106; HONORABLE LEE WATERS, JUDGE


_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ. (1)

MEMORANDUM OPINION


 Appellants Darrell and Linda Sehorn, acting individually and on behalf of the estate
of their daughter Stacey Sehorn, Shawn Reams and Nakisha Horton appeal the dismissal
of their suit for damages against the Texas Department of Transportation. The trial court
dismissed it on the Department's plea to the jurisdiction that argued the suit was barred by
sovereign immunity. Appellants present a single point asserting the trial court's dismissal
was error. We affirm the dismissal. 

 Stacey Sehorn died, and Shawn Reams and Nakisha Horton were injured, when the
vehicle in which they were passengers ran through the intersection of Loop 171 and Texas
Highway 273 south of Pampa in Gray County. The intersection is T-shaped, with
southbound Loop 171 dead-ending at that point on Highway 273. Appellants' pleadings
said the vehicle crossed Highway 273, impacted the ditch and became airborne, coming
to rest in the adjacent pasture. 

 Appellants' pleadings asserted the intersection was dangerous, and drivers were not
properly and adequately warned of the approaching intersection and the approaching end
of the roadway. Specifically, appellants' alleged, the Department "had in place numerous
signs and warning devices, which were defective in that they were not properly sized,
configured, and placed." Appellants further alleged the Department had actual knowledge
that the intersection was "dangerously defective," from the State's accident records
showing a number of motor vehicles had failed to stop and had run through the intersection
into the pasture, in the same manner as this vehicle. Appellants alleged the Department
further had actual knowledge that the traffic signs and warnings in place were not
performing their intended traffic control function. They alleged that the Department, despite
its actual knowledge, failed to warn the public, and these motorists in particular, of the
defective roadway. By failing to correct, or warn of, the dangerous intersection, appellants
pleaded, the Department breached its duty of care under Sections 101.021(2) and
101.022(a) of the Texas Tort Claims Act. (2)

 Photographs introduced at the hearing on the Department's plea to the jurisdiction
show traffic at the intersection at the time of the accident was controlled by a stop sign on
Loop 171. Directional signs with arrows identifying Highway 273 North and South stood
facing the intersection across that highway. The trial court also considered a report signed
by registered professional engineer R. T. Abrahamson attached to the response appellants
filed to the Department's plea to the jurisdiction. The report describes the signs that would
be encountered by a southbound driver approaching the intersection. (3) It states, among
other things, that the size of the stop sign "does not appear to be adequate," that the
elevation of signs on the far side of the intersection was too low for normal viewing range
for a southbound driver, and that the far side of the intersection did not have a large "arrow
board sign." It notes also that the superelevation of Highway 273 at the intersection is such
that southbound drivers on Loop 171 cannot see the pavement on Highway 273. The
report further states that the "height, line of sight, size, conspicuity, legibility, and target
value of the signs described do not appear to meet/exceed standards" and that
"[s]outhbound drivers do not have adequate stimulus when approaching State Highway 273
in darkness and/or inclement weather (4) to respond in a timely manner." The report notes
the speed limit for drivers approaching the intersection was 70 mph during the day and 65
mph at night. Abrahamson's conclusions include those that the section of the highway on
which the accident occurred is dangerous based on the number of incidents at the
intersection involving southbound vehicles, and that revising the signage and median
pavement marking provisions would significantly reduce accidents involving southbound
drivers. (5) 

Standard of Review 

 The Department's plea to the jurisdiction challenged the district court's subject
matter jurisdiction over appellants' claims against it. Texas Dep't of Transp. v. Jones, 8
S.W.3d 636, 637 (Tex. 1999). The existence of the court's subject matter jurisdiction is a
legal question that we review de novo. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922,
928 (Tex. 1998). 

Applicable Law

 The State is immune from suit for damages unless it has expressly consented to be
sued. Absent the State's consent, a trial court lacks subject matter jurisdiction over a suit
against the State. Jones, 8 S.W.3d at 638. This immunity applies to the Department, as
a state entity. Texas Dep't of Transp. v. Garza, 70 S.W.3d 802, 806 (Tex. 2002). See
Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.1 (Tex. 2003). A party suing
a state entity must establish the State's consent to the suit, and may do so by reference to
a statute or a resolution granting express legislative permission. Jones, 8 S.W.3d at 638. 
To waive the State's sovereign immunity, a statute or resolution must contain a clear and
unambiguous expression of the Legislature's waiver of immunity. Wichita Falls State
Hosp., 106 S.W.3d at 696. 

 To the extent the Texas Tort Claims Act creates liability, it waives the State's
sovereign immunity from suit for tort claims. § 101.025; Texas Dep't of Transp. v. Ramirez,
74 S.W.3d 864, 866 (Tex. 2002). Section 101.021(2) of the Act provides for the liability of
a Texas governmental unit for personal injury and death caused by a condition of real
property if the governmental unit would, were it a private person, be liable to the claimant
according to Texas law. Section 101.022(a) of the Act provides that for claims arising from
premise defects, the governmental unit owes the claimant only the duty a private person
owes a licensee on private property, unless the claimant pays for the use of the premises. 

 The Act's waiver of the State's immunity is subject to exclusions and exceptions,
among which are those stated in Section 101.056, excluding claims based on a
governmental unit's exercise of discretionary powers, and those stated in Section 101.060,
relating to traffic and road control devices. 


Analysis

 The parties' arguments on appeal center on the application of Sections 101.056 and
101.060(a) to appellants' allegations against the Department. The Department contends
appellants' allegations concern the initial selection and placement of traffic control devices
and the failure to modify these features, discretionary decisions for which the Department
retains immunity. 

 Appellants seem to contend Section 101.056 does not exclude the Department's
failings with respect to the intersection from the Act's waiver of immunity because Section
101.022(a) imposes on the Department the duty to make the roadway safe or warn the
public of its dangerous condition. Under appellants' view, the Department therefore does
not have discretion to decide whether to comply with that duty, and their allegations the
Department failed to comply bring the case within the ambit of Section 101.021(2). 
Controlling authority compels our disagreement with appellants. The exclusion for
discretionary actions under Section 101.056 applies to suits attempting to hold the
Department responsible for premises defects. See State ex rel. State Dep't of Highways
and Pub. Trans. v. Gonzalez, 82 S.W.3d 322, 325-26 (Tex. 2002); Ramirez, 74 S.W.3d at
866; State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999). Appellants also contend 101.056
has no application here because of the Department's knowledge of the dangerous condition
of the intersection. The supreme court's application of Section 101.056 in Ramirez
forecloses that contention. Ramirez involved premise defect claims that the Department
had failed to correct or warn of a dangerous condition allegedly created by a highway
median's slope and the absence of safety features between opposing lanes of traffic. Like
here, the plaintiff in Ramirez presented accident reports about similar accidents on the
same section of highway to establish its dangerous condition and the Department's
knowledge of the dangerous condition. In a per curiam opinion, the supreme court
reversed the court of appeals, which had affirmed the trial court's denial of the
Department's plea to the jurisdiction, and dismissed the claims, finding them barred by
sovereign immunity. The supreme court cited Section 101.056(2) and reiterated its holding
in Rodriguez that the design of a public work like a roadway is a discretionary function
involving many policy decisions, and the governmental entity responsible may not be sued
for such decisions. Ramirez, 74 S.W.3d at 867, citing Rodriguez, 985 S.W.2d at 85. The
court also restated its holding in State v. Miguel that decisions about installing safety
features are discretionary decisions for which the State may not be sued. Ramirez, 74
S.W.3d at 867, citing State v. Miguel, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam) and
Maxwell v. Texas Dep't of Transp., 880 S.W.2d 461, 463 (Tex.App.-Austin 1994, writ
denied). (6) Ramirez establishes that an allegation the Department knew of the dangerous
condition of the intersection does not preclude the application of the discretionary function
exclusion stated in Section101.056. 

 Appellants also assert Section 101.060(a) does not bar their suit because to the
extent their claims are based on the signs and traffic control devices at the intersection,
they come within the language of Section 101.060(a)(2), relating to the condition of the
signs and devices. They note the statement in Gonzalez, 82 S.W.3d at 327, that Section
101.060(a)(2) requires the State to maintain traffic signs in a condition sufficient to perform
their intended traffic control function, and argue Section 101.060(a)(2) waives the
Department's immunity from suit for its failure to do so here when it was on notice of the
defective condition of the control devices from the numerous previous accidents. Again,
controlling authority requires that we disagree.

 In Gonzalez, the supreme court determined that a traffic sign's susceptibility to
vandalism is not a "condition" of the sign under Section 101.060(a)(2). Id. at 328-29. The
supreme court also considered the meaning of the term "condition" in Texas Dep't of
Transp. v. Garza, 70 S.W.3d 802 (Tex. 2002). There, the court found a traffic sign that
accurately stated the established speed limit did not present a "condition" of the sign within
the meaning of Section 101.060(a)(2) so as to permit a suit alleging the Department was
negligent in failing to correct the 45-mph speed limit near a school. Id. at 807. In so doing,
the court stated that the "condition" of a traffic sign or signal referred to in Section
101.060(a)(2) is something "wrong" with the sign or signal. The court further summarized
several prior decisions by noting it had found a waiver of immunity under the language of
Section 101.060(a)(2) only when the sign or signal was unable to convey the intended
traffic control information, or conveyed traffic control information other than what was
intended. Id.

 Even liberally construed, appellants' pleadings do not allege something "wrong" with
the traffic control devices for southbound traffic on Loop 171 approaching its intersection
with Highway 273, in the sense case law has applied Section 101.060(a)(2). The signs in
place are not alleged to be obstructed from drivers' vision like that in Lorig v. City of
Mission, 629 S.W.2d 699 (Tex. 1982) (per curiam), to state wrong information like the
erroneous speed limit in Alvarado v. City of Lubbock, 685 S.W.2d 646 (Tex. 1985), or to
mislead drivers like the modified red stop light with a left-turn arrow in Sparkman v.
Maxwell, 519 S.W.2d 852 (Tex. 1975). Nor do appellants' pleadings assert the traffic
control devices were in disrepair or were not activated, like the pavement markers and
school zone sign in City of Midland v. Sullivan, 33 S.W.3d 1 (Tex.App.-El Paso 2000, no
pet.). As noted, appellants pleaded that the signs and warning devices in place at the time
of the accident were not properly sized, configured, and placed. But it is clear from the
pleadings and evidence presented here that they were sized, configured and placed in the
manner selected by the Department. The propriety of those decisions by the Department
does not reflect the "condition" of the signs and devices for purposes of Section
101.060(a)(2). Garza, 70 S.W.3d at 807. Such decisions instead are the type for which
the Act retains the State's immunity from suit. See Ramirez, 74 S.W.3d at 867; Texas
Dep't of Transp. v. Bederka, 36 S.W.3d 266, 271 (Tex.App.-Beaumont 2001, no pet.). 

 Appellants' point of error is overruled. The trial court's judgment of dismissal is
affirmed.

 James T. Campbell

 Justice
1. Johnson, C.J., not participating. 
2. Reference to sections or the act are to Texas Civil Practice and Remedies Code
Annotated (Vernon 1997) unless otherwise noted.
3. The report also makes reference to "well worn" rumble strips that were "almost
ineffective."
4. The accident report in the record gives the time of the accident as 2:45 a.m. The
report indicates the weather was cloudy and the pavement was dry.
5. Darrell Sehorn also testified at the hearing on jurisdiction. He identified
photographs of the intersection depicting skidmarks and the signs in place at the
intersection at the time of the accident and those later installed. He also criticized the
contours of the ditch on the far side of the intersection.
6. The court in Miguel further stated: "A court should not second-guess a
governmental unit's decision about the type of marker or safety device that is the most
appropriate." 2 S.W.3d at 251, citing Maxwell, 880 S.W.2d at 464. See also Siders v.
State, 970 S.W.2d 189, 192 (Tex.App.-Dallas 1998, pet. denied) ("Lights, signs, and safety
features are part of a roadway design; therefore, the placement of stop signs and other
safety features are discretionary in nature and cannot give rise to liability under the Tort
Claims Act.").



false"
 UnhideWhenUsed="false" Name="Medium List 2 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0319-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 9, 2010

______________________________

 

DAVID TULIO RODRIGUEZ, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

_____________________________

FROM THE 84TH DISTRICT COURT OF HUTCHINSON
COUNTY;

NO. 10,257; HONORABLE WILLIAM D. SMITH, JUDGE

___________________________

 

Before
QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 

 

CONCURRING
OPINION

 

 

I
agree with the result reached by the majority, and I applaud the decision to
address Appellant's third issue as presented; however, I write separately to
express my opinion that Appellant's general premise about that issue is
misstated.




 

By his third issue Appellant contends the trial
court abused its discretion when it failed to "follow the strictures of
Article 36.01 (a)(1), Texas Code of Criminal
Procedure, by not reading the State's enhancement paragraphs to the jury and
subsequently entering the Appellant's plea to the same."  While I agree that the trial court committed
error during the punishment phase of Appellant's trial, it wasn't because the
enhancement paragraphs weren't read and a plea wasn't entered.  

On January 29, 2009, a Hutchinson County Grand
Jury returned an indictment charging Appellant with the first degree felony
offense of aggravated assault on a public servant[1]
(Count One) and the state jail felony offense of burglary of a building[2]
(Count Two).  While the indictment itself
did not contain any enhancement allegations, on August 17, 2009, the State
filed notice of its intent to seek enhancement of the punishment range for each
count.[3]
   Notwithstanding the express intent to
request the court to instruct the jury on the enhanced range of punishment, the
State never insisted that the enhancements be read or that Appellant enter a
plea thereto.  By failing to do so, the
State waived those enhancements.  Because
those enhancements were waived, the trial court did not commit error by failing
to read the enhancements or have the Appellant enter a plea.  While the trial court may have erred in
instructing the jury as to the range of punishment, an issue not presented to
this Court, it did not err in the manner presented by Appellant's third
issue.  Accordingly, I concur with the
majority in finding no reversible error raised.

 

Patrick A. Pirtle

      Justice

 

Do not publish.

 

 











[1]See Tex. Penal Code Ann. § 22.01(a)(2), §
22.02(a)(2), §
22.02(b)(2)(B) (Vernon Supp. 2010).





 

[2]See Tex. Penal Code Ann. § 30.02(a)(1), §
30.02(c)(1) (Vernon Supp. 2010).





 

[3]See Brooks v. State, 957 S.W.2d 30 (Tex.Crim.App. 1997) (holding that enhancement allegations
do not need to be contained within the body of the primary charging document).