# NO. 12-10-00127-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MONTE STROTHER AND JOAN STROTHER, INDIVIDUALLY AND AS REPRESENTATIVE FOR ALL OTHER WRONGFUL DEATH BENEFICIARIES, AND AS HEIRS AT LAW AND REPRESENTATIVES OF THE ESTATE OF TRACY* | § | *APPEAL FROM THE 7TH* |
| *LYNN KING, DECEASED, APPELLANTS* | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *CITY OF TYLER, A TEXAS MUNICIPALITY, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Monte Strother and Joan Strother (the Strothers), individually and as representatives for all other wrongful death beneficiaries, and as heirs at law and representatives of the estate of Tracy Lynn King, deceased, appeal the trial court's order granting the City of Tyler's plea to the jurisdiction and dismissing their case. The Strothers raise three issues on appeal. We affirm.

## BACKGROUND

Tracy Lynn King was killed when her car was struck by a tractor trailer. King had approached a "T intersection" and stopped her vehicle in compliance with an overhead flashing red signal light. Subsequently, King proceeded into the intersection where a tractor trailer struck her car, resulting in her death. There was no overhead flashing red signal light for cross traffic at that intersection.

Thereafter, the Strothers brought the instant wrongful death and survival action against the City of Tyler (the City). Their petition sets forth, in pertinent part, as follows:

> [The City] owed a duty to Tracy Lynn King to replace the inadequate, pre-existing traffic-control devices with devices that would make the intersection where Tracy Lynn King was killed safer.
>
> [The City] also owed [King] the duty to correct the absence or condition by installing a different and safer traffic-controlled device within a reasonable time after having received actual or constructive notice of its absence or condition and of the necessity for the installation of same.

The Strothers further alleged that, three years before the collision, the City completed a traffic study concerning the intersection in question and received approval to replace the existing traffic light from the Texas Department of Transportation's District Engineer for the City.

On February 24, 2010, the City filed a plea to the jurisdiction, in which it contended that the Strothers' lawsuit was barred by its governmental immunity. The Strothers responded that the City had waived its immunity pursuant to Texas Civil Practice and Remedies Code, sections 101.021, 101.0215, and 101.060. On April 1, 2010, the trial court granted the City's plea to the jurisdiction. This appeal followed.

### SOVEREIGN IMMUNITY

In their first, second, and third issues, the Strothers argue that the trial court erred in granting the City's plea and dismissing their case because the City waived its immunity pursuant to the Texas Tort Claims Act.[1] Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Id.* However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *Id.*

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.0215, 101.022(b) 101.060 (Vernon 2005 & Supp. 2010). Specifically, the Strothers contend that the City waived its immunity because the Strothers pleaded sufficient facts to demonstrate that the City failed to correct a condition and/or absence of a traffic control device under its control within a reasonable amount of time after it received notice thereof.

2

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

The City is immune from both suit and liability for King's death unless its immunity is waived by the terms of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.0215 (Vernon 2005). The threshold inquiry is whether immunity has been waived under section 101.021, which states that "[a] governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2); *Tex. Dep't of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex. 2002). However, there are exceptions to section 101.021(2)'s waiver provision. *Garza*, 70 S.W.3d at 806. Even if waiver would be established under section 101.021, the City retains governmental immunity for claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." TEX. CIV. PRAC. & REM. CODE ANN. § 101.060(a)(2) (Vernon 2005).

**Condition**

We first consider the correct interpretation of the word "condition" as used in the Act. When construing a statute, we begin with the plain and common meaning of the statutory language. *Garza*, 70 S.W.3d at 806; *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999). "Condition" is not defined by the Act. *Garza*, 70 S.W.3d at 806. However, we may look to the context of the term to determine the legislature's intended meaning. *Id.* "Condition" is first found in the general waiver section, which states that immunity is waived for "personal injury and death so caused by a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Then, section 101.060(a)(2) retains governmental immunity for claims arising from "the absence, condition, or malfunction of a traffic or road sign,

3

signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2). The legislature's placement of "condition" in between "absence" and "malfunction," coupled with the language that recants section 101.060(a)(2)'s retention of immunity when the "condition" is "not corrected" after notice, indicates that the legislature intended a "condition" of a signal to be not just any condition. *Garza*, 70 S.W.3d at 807. Rather, the legislature intended this sort of "condition" to be only something "wrong" with the traffic sign or signal such that it would require correction by the governmental unit after notice. *Id.*

Historically, waiver of immunity for the condition of a traffic sign or signal has been found only in situations in which the sign or signal either (1) was unable to convey the intended traffic control information or (2) conveyed traffic control information other than what was intended. *Id.*; *see, e.g.*, *Alvarado v. City of Lubbock*, 685 S.W.2d 646, 647–49 (Tex. 1985) (speed limit sign was "condition" where it posted limit of fifty-five miles per hour when city ordinance set actual speed limit at fifty miles per hour because it conveyed traffic control information other than what was intended); *Lorig v. City of Mission*, 629 S.W.2d 699, 700 (Tex. 1982) (trees and branches obstructed stop sign, preventing it from conveying intended traffic control information to motorists; sign's obstruction from view was "condition"); *see also, e.g.*, *Sparkman v. Maxwell*, 519 S.W.2d 852, 854–56 (Tex. 1975) (stop light was a "condition" because it displayed red left turn arrow that confused motorists and, thus, displayed wrong traffic control information).

In the case at hand, there is no allegation that the signal light in question was (1) unable to convey the intended traffic control information or (2) conveyed traffic control information other than what was intended. Rather, the Strothers' allegations support that the signal, a flashing red light, conveyed the intended traffic control information to King. That flashing red light required that King stop and yield the right-of-way to a vehicle that had entered the intersection from another highway or that was approaching so closely as to be an immediate hazard to her movement in or across the intersection. *See* TEX. TRANSP. CODE ANN. §§ 544.004 (operator shall comply with traffic control device), 544.008 (flashing signals), 544.010 (stop signs and yield signs), 545.153 (vehicle entering stop or yield intersection) (Vernon 1999). Nonetheless, the Strothers argue that the light was unable to convey to King the information it was conveying to cross traffic, thereby causing her to mistakenly believe that the information conveyed to cross traffic was identical to that which the signal conveyed to her. We cannot conclude that this "condition" amounts to something "wrong" with the traffic signal such that it would require correction by the City after it received

4

notice. As such, we decline to extend the law to include this "condition" alleged by Strother. Thus, we hold that the allegations in the Strothers' petition do not set forth a "condition" for which the City waived its immunity under section 101.021(2). *See Garza*, 70 S.W.3d at 807.

## Absence

Even had we determined that the City waived its immunity under section 101.021(2), the outcome would not differ. Under section 101.060(a)(2), the word "absence" requires a prior presence; that is, it does not apply to a governmental unit's initial installation of, or failure to initially install, a traffic signal. *See City of Grapevine v. Sipes*, 195 S.W.3d 689, 695 (Tex. 2006). Here, the Strothers argue that the implementation of a policy decision to install a different traffic-control device is the absence of the traffic control device. Thus, they conclude that the City waived immunity" under section 101.060(a)(2).

The facts in the instant case do not support the conclusion that there was an "absence" of a traffic signal as interpreted by the court in *Sipes*. Here, there was a functioning signal present at the intersection at the time of the accident. The City's decision[2] to replace this functioning device with another, purportedly safer, traffic signal does not amount to an "absence" of the signal merely because there was no prior presence of *that* type of purportedly safer signal. If anything, the City's decision is more closely analogous to a governmental unit's initial installation of a traffic signal, a discretionary act for which the City retains immunity. *See id.* Accordingly, we hold that the City did not waive its immunity under section 101.060(a)(2).

Appellant's first, second, and third issues are overruled.


## CONCLUSION

The City did not waive its immunity. Accordingly, the Strothers' first, second, and third issues are overruled. Having overruled Appellant's first, second, and third issues, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 23, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[2] We construe the pleadings liberally in favor of the Strothers. We assume arguendo, but do not decide, that the City's receipt of approval to replace the existing traffic light from the Texas Department of Transportation's District Engineer for the City amounts to a decision by the City to replace the traffic light.

5