COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TEXAS DEPARTMENT OF PUBLIC SAFETY, | § | No. 08-13-00117-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 41st District Court |
| | § | |
| MERARDO BONILLA, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC # 2011-DCV-10226b) |
| | § | |

## O P I N I O N

The Texas Department of Public Safety (DPS) challenges the trial court's denial of its immunity-based plea to the jurisdiction and summary judgment motions. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

This case concerns a traffic accident that occurred in El Paso on February 19, 2010, when Trooper Cesar Cruz ran a red light while pursuing a speeder and struck a vehicle driven by Merardo Bonilla. Trooper Cruz was driving his DPS-issued patrol vehicle westbound on Montana Avenue, about a quarter of a mile from the intersection of Montana and Magruder Streets, when the speeding vehicle, a pickup truck also traveling west on Montana, passed him in the next lane. The speed limit on Montana Avenue is 35 m.p.h. Cruz was driving approximately 35 to 40 m.p.h., and he estimated that the speeding truck was traveling around

55 m.p.h. Trooper Cruz then observed the pickup change lanes several times and run the red traffic signal light at the intersection of Montana and Magruder. At this point, Cruz activated his patrol vehicle's emergency lights, but not its siren. Cruz claimed that he yielded at the intersection and scanned for traffic. As he entered the intersection, he turned on the vehicle's camera and his vehicle struck Bonilla's. Bonilla was injured as a result of the accident.

DPS brings three issues for review: (1) whether the trial court improperly denied its plea to the jurisdiction based on sovereign immunity under Section 101.055(2) of the Texas Tort Claims Act (TTCA), the "emergency exception;" (2) whether the trial court erred in denying its plea and/or motions for summary judgment based on the official immunity of Trooper Cruz, and (3) whether the court erred by overruling DPS's objections to the evidence Bonilla submitted in response to the plea and the motions. Because the admissibility of Bonilla's evidence factors into our analysis of the trial court's other rulings, we consider it first.

## OBJECTIONS TO BONILLA'S EVIDENCE

DPS District 4B Reconstruction Team investigated and reconstructed the accident between Trooper Cruz and Bonilla, and drafted a report detailing its findings and conclusions. DPS produced the team's report and materials to Bonilla during discovery, thus authenticating them. TEX.R.CIV.P. 193.7. The conclusions were based, in part, upon data collected from the involved vehicles' Event Data Recorders ("EDRs"), or "black boxes." Specifically, the report states:

> Trooper Cruz approached the intersection and at a minimum distance of 164.95 feet prior to impact and was at 100% throttle. This was achieved by using the accelerate from any velocity formula in conjunction with the EDR data from [Cruz's patrol vehicle.] Measurements from the scale diagram indicate that the area of impact was 65 feet from the stop line that Trooper Cruz was approaching. Subtracting the measurement of 65 feet from the minimum distance of 164.95 feet, which puts Trooper Cruz at 100% throttle 99.9 feet prior to the stop line. This information obtained conflicts with the statement from Trooper Cruz that he

2

yielded at the stop line before proceeding through the intersection. Data from Unit #1's EDR confirms that once Trooper Cruz accelerated to 100% throttle, he did not remove his foot from the accelerator pedal until .5 seconds before impact. He also states he was distracted by turning on the power to his in-car video camera.

DPS objected to the trial court's consideration of the reconstruction team's report because Bonilla had not attached the raw EDR data and because he failed to establish the reconstruction team's expert qualifications. Bonilla counters that the report is an admission by a party-opponent. *See* TEX.R.EVID. 801(e)(2).

The objection concerning the raw EDR data is based upon Rule 166a(f) of the Texas Rules of Civil Procedure. *See* TEX.R.CIV.P. 166a(f). We review the exclusion or admission of summary judgment evidence for an abuse of discretion. *Blake v. Dorado*, 211 S.W.3d 429, 431-32 (Tex.App.--El Paso 2006, no pet.). In relevant part, Rule 166a(f) requires that affidavits be made on personal knowledge, set forth such facts as would be admissible in evidence, and that sworn or certified copies of documents referenced within the affidavit be attached thereto or served therewith. *Id*. These requirements stem from the evidentiary prohibition of hearsay. *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 879 (Tex.App.--Dallas 1989, no pet.). As such, they are subject to hearsay exceptions. *Martinez v. Midland Credit Management, Inc.*, 250 S.W.3d 481, 484-85 (Tex.App.--El Paso 2008, no pet.); *McAlister v. Medina Elec. Co-op., Inc.*, 830 S.W.2d 659, 664 (Tex.App.--San Antonio 1992, writ denied).

An admission by a party-opponent is not hearsay. TEX.R.EVID. 801(e)(2); *McAlister*, 830 S.W.2d at 664 (applying the party-opponent exception to Rule 166a(f)). "[A]*ny* statement by a party-opponent is admissible against that party." [Emphasis in original]. *Reid Road Municipal Utility Dist. No. 2 v. Speedy Stop Food Stores, Ltd*., 337 S.W.3d 846, 858 (Tex. 2011), *quoting Bay Area Healthcare Grp.*, *Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007).

Admissions by party-opponents include:

> (A) the party's own statement in either an individual or representative capacity;

> (B) a statement of which the party has manifested an adoption or belief in its truth;

> (C) a statement by a person authorized by the party to make a statement concerning the subject;

> (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or

> (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

TEX.R.EVID. 801(e)(2).

DPS responds to the Rule 802(e)(2) arguments by asserting--somewhat incredibly--that no agency relationship between it and the reconstruction team has been established. The team's report begins with a header reading: "Texas Department of Public Safety District 4B Crash Team Reconstruction Investigation." The report's participants are identified as Trooper Derek Pearson, Sergeant Michael Hodgson, Sergeant Lee Snead, and Corporal Roberto C. Reyna. At the hearing on the plea and the motions, DPS's counsel conceded that these individuals were DPS employees. Counsel also conceded that the report was "created by an internal investigative arm of [DPS] to explain to itself what happened [to Trooper Cruz] in a state vehicle."[1] We conclude that the members of the reconstruction team are clearly agents of DPS and that they were authorized by DPS to make statements like those contained in their report. The trial court did not abuse its discretion by overruling DPS's Rule 166a(f) objection.[2]

---

[1] DPS's counsel also admitted during the hearing that she has proffered and relied upon DPS reconstruction reports on DPS's behalf in other cases.

[2] DPS also argues that Bonilla's failure to include the raw EDR data to the report renders the report conclusory. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.--Dallas 2004, pet. denied)(holding affidavit was conclusory for

4

DPS next argues that Bonilla failed to establish the expert qualifications of its reconstruction team. Whether a witness is qualified to offer expert testimony is a matter committed to the trial court's discretion. *Broders v. Heise*, 924 S.W.2d 148 (Tex. 1996). While the proponent of expert testimony has the burden of establishing the expert's qualifications, it is not unusual or improper for the other party to stipulate to the expert's credentials. *See, e.g., Guerrero v. Smith*, 864 S.W.2d 797, 801-02 (Tex.App.--Houston [14th Dist.] 1993, no writ). This would certainly be true here, where DPS is the regular employer of the reconstruction team, and the team's normal job function is to draw expert conclusions on DPS's behalf. Nonetheless, DPS will not stipulate to its team's qualification *for purposes of this litigation*. But as its counsel made clear to the trial court, DPS does not directly challenge its team's expert credentials.[3] As such, the question becomes whether DPS has otherwise adopted the opinions and findings of its reconstruction team.

In *Reid Road v. Speedy Stop*, the Texas Supreme Court considered whether a party could rely on the statement of another party's expert over that party's objection. *Speedy Stop Food Stores, Ltd.*, 337 S.W.3d at 849. That case arose from an administrative condemnation proceeding by a utility district against a convenience store. At the administrative stage of the case, the district offered the testimony of third-party appraiser regarding the value of the utility easement it sought to obtain. *Id*. at 847. When the matter became a civil suit, the utility district decided that it disagreed with the appraiser's opinion and did not further rely upon it. But the convenience store did. *Id*. at 849. The district objected that the appraiser's statement was

---

failure to include referenced documents). But the admission by party-opponent exception makes the report admissible "even if the opposing expert witness does not disclose the bases for the conclusion adverse to the expert's client." *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 214 (Tex.App.--Beaumont 2001, no pet.).

[3] In response to the trial court's inquiry as to whether DPS was directly challenging the credentials of its own employees, DPS's attorney stated: "I'm not challenging my own guys . . . I'm putting [Bonilla's attorney] to the burden that she has."

hearsay and that the convenience store had not identified the appraiser in its expert designations. *Id.* Although the appraiser was not the district's regular employee, the Supreme Court held that the district had nonetheless "manifested its belief in and approval of" the expert's opinion by relying on it prior to litigation, and thus that it was admissible as an admission by adoption. *Id.* at 857, *citing* TEX.R.EVID. 801(e)(2)(B). The party-opponent exception thus trumped not only the hearsay objection, but the disclosure objection. *Id.* The court further noted that if an agency relationship been had established between the expert and the district, the expert's opinion would "of course" have been admissible under Rule of Evidence 801(e)(2)(D). *Id.* at 856, n.5

In *Yarbrough's Dirt Pit, Inc. v. Turner*, the Beaumont Court of Appeals also relied on the admission by party-opponent rule to overrule a party's objection to its own expert's opinion. *Yarbrough's*, 65 S.W.3d at 215. There, a plaintiff relied on a defendant's expert's deposition testimony as summary judgment proof against the affirmative defense of contributory negligence. *Id.* at 214-15. Specifically, the expert testified that he could place no responsibility on the plaintiff for the automobile accident. *Id.* The defendant objected that its expert had not sufficiently explained the basis for this opinion, and thus it was conclusory. *Id.* The court of appeals held that the "conclusion of an expert witness hired by an opposing party to speak on the subject matter on behalf of the party opponent is admissible against the party opponent, and the conclusion may be relied on in a motion for summary judgment even if the opposing expert witness does not disclose the bases for the conclusion adverse to the expert's client." *Id.* at 214.

In another case cited in *Speedy Stop*, the *Collins v. Wayne Corp* case, the Fifth Circuit Court of Appeals held that the report of an expert hired by a bus manufacturer to reconstruct a serious bus accident was admissible as an admission by the manufacturer over its objections that the expert was only a consultant and that his report was incomplete. *Collins v. Wayne Corp.*,

6

621 F.2d 777, 782 (5th Cir. 1980), *superseded on other grounds by rule as stated in Mathis v. Exxon Corp.*, 302 F.3d 448 (5th Cir. 2002). "[The manufacturer] hired [the expert] to investigate the bus accident and to report his conclusions. In giving his deposition he was performing the function that [the manufacturer] had employed him to perform. His deposition, therefore, was an admission of [the manufacturer]." *Id.* Similar reasoning is applicable here. *See also State v. Buckner Const. Co.*, 704 S.W.2d 837, 846 (Tex.App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.)(allowing the statement of an auditor employed by the State of Texas to be used as an admission by the state).

DPS employs reconstruction teams for the specific purpose of investigating automobile accidents and reporting their conclusions. Trooper Cruz testified that it is DPS's practice to have a reconstruction team investigate any accident involving a DPS trooper. Although DPS refuses to stipulate to its team's expertise for litigation purposes, it clearly and obviously accepts the team's credentials in routine, day-to-day operations. Along those lines, it is noteworthy that DPS's counsel did not directly attack the team's qualifications. The District 4B Reconstruction Team's report is an admission by the DPS, and it is admissible pursuant to TEX.R.EVID. 801(e)(2)(D). The trial court did not abuse its discretion in overruling DPS's objections to the report. We overrule DPS's third issue.[4]

### SOVEREIGN IMMUNITY VIA THE EMERGENCY EXCEPTION

DPS contends that the trial court erred by not sustaining its plea to the jurisdiction based on sovereign immunity under the emergency exception, Section 101.055(2) of the TTCA. A governmental unit is immune from suit and liability unless the immunity has been waived.

---

[4] DPS also challenges the trial court's refusal to exclude as hearsay several unverified statements made by witnesses to the accident, as well as notes taken by DPS investigators during interviews of such witnesses. Bonilla did not respond to this argument. We agree that the trial court abused its discretion by not excluding these materials, and we do not consider them in addressing DPS's remaining issues.

*Texas Department of Transportation v. Garza*, 70 S.W.3d 802, 806 (Tex.2002). With certain exceptions, the TTCA waives immunity for claims arising from the use of a motor-driven vehicle by a governmental entity's employee. TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(1) (West 2011). One exception applies for emergency situations, so long as the government employee's action (1) is in compliance with any laws and ordinances applicable to emergency action, or (2) if there are no applicable laws or ordinances, is free from conscious indifference or reckless disregard for the safety of others. *Id.* § 101.055(2). As a result, the TTCA does not waive governmental immunity for ordinary negligence arising from an emergency situation. *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998). "To recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *Id.* at 430. We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Texas Department of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

Although its arguments primarily focus on the latter, DPS challenges both Bonilla's pleadings and his ability to factually defeat immunity. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate jurisdiction. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 446 (Tex. 1993). We must construe the pleadings liberally "in favor of the plaintiff and look to the pleader's intent." *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, the issue is one of pleading sufficiency and the plaintiff is entitled to amend. *Texas Department of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). Any other rule "would essentially allow governmental entities the unjust advantage of being not only a litigant, but also the judge of the plaintiff's pleadings."

8

*Texas A & M University System v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007).

Bonilla's pleadings are sufficient to establish jurisdiction. They set out the basic facts of the accident, including that Trooper Cruz disregarded the red light, and affirmatively assert that governmental immunity is waived under the TTCA. DPS suggests that because Bonilla alleged that Cruz was negligent, this constitutes a judicial admission barring his ability to assert reckless disregard or conscious indifference. But a judicial admission must be a "clear, deliberate, and *unequivocal* statement." [Emphasis added]. *Regency Advantage Limited Partnership v. Bingo Idea-Watauga, Inc*., 936 S.W.2d 275, 278 (Tex. 1996). Obviously, an unequivocal statement must concern an unequivocal matter. For instance, in *City of El Paso v. Segura*, this Court held a specifically-pled assertion that police officers were responding to an emergency to be a judicial admission. *City of El Paso v. Segura*, No. 08-02-00240-CV, 2003 WL 1090661, at *3 (Tex.App.-El Paso Mar. 13, 2003, pet. denied). Whether or not there is an emergency is a definitive, categorical matter that is completely unlike the often hazy and nebulous border between the various standards of civil conduct. Bonilla's allegation of negligence is not a judicial admission. We now turn to DPS's fact-based arguments.

When the governmental unit raises the emergency exception, the plaintiff has the burden to raise disputed fact issues as to whether the actions were taken in response to an emergency, or were reckless. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006). Bonilla advances both of these arguments. Bonilla cites *Texas Dept. of Public Safety v. Rodriguez*, 344 S.W.3d 483 (Tex.App.--Houston [1st Dist.] 2011, no pet.) in support of his argument that Trooper Cruz was not engaged in an emergency. But *Rodriguez* does not hold that a traffic stop is not an emergency for purposes of Section 101.055(2). *See id*. at 496. Instead, it considers whether a mobile police surveillance team was officially immune from an auto accident suit

9

after running a red light in order to avoid losing a suspect it was following "for the purpose of 'documenting the [suspect's] activities.'" *Id.* In the present matter, Trooper Cruz was pursuing a speeding driver who was making multiple lane changes and disobeying traffic control devices. These facts constitute an emergency for purposes of the emergency exception.

The laws applicable to Trooper Cruz's driving actions are Sections 546.001 and 546.005 of the Texas Transportation Code. TEX.TRANSP.CODE ANN. §§ 546.001, 546.005 (West 2011). Section 546.005 sets out the general standard of care required of the operator of an authorized emergency vehicle, and Section 546.001 specifies the driving actions that are permissible by the operator while engaged in an emergency. *Id.*[5] In relevant part, Section 546.001 provides that a police officer engaged in an emergency may "proceed past a red or stop signal or stop sign, *after slowing as necessary for safe operation*." [Emphasis added]. TEX.TRANSP.CODE ANN. § 546.001(2)

DPS argues that Trooper Cruz's affidavit and deposition testimony establish that he yielded at the intersection's stop line before proceeding through the red light he was facing, slowed, looked right and left, and determined that it was safe to proceed. DPS also asserts that Trooper Cruz's testimony establishes that his view was not obstructed at the intersection. But Bonilla has raised genuine issues of material fact concerning each of these matters.

DPS's reconstruction team concluded that: (1) the evidence gathered in the investigation conflicted with Cruz's report of having yielded at the stop line; (2) Cruz did not remove his foot from his vehicle's accelerator pedal until .5 seconds before impact; (3) Cruz was distracted by turning on his in-car camera as he entered the intersection and thus was not "fully aware of his surroundings;" and (4) there was a building to Cruz's right (which was the direction from which

---

[5] *See also* TEX.TRANSP.CODE ANN. § 546.002 (making § 546.001 applicable when the operator is "pursuing an actual or suspected violator of the law").

Bonilla was traveling) that "created a sight restriction [interfering with Cruz's ability] to fully observe all vehicles at the intersection he was approaching." Additionally, Bonilla produced a DPS Interoffice Memorandum written by Corporal Santos Carrasco to Sergeant David Ramos concerning the subject accident. DPS did not object to this document. Corporal Carrasco concluded:

> It is my opinion that Trooper Cesar Cruz was traveling at an unsafe speed approaching a red light at an intersection. Trooper Cruz did not use the emergency vehicle's siren to warn persons approaching the intersection. Due to sight restriction and the high volume of traffic in that intersection, Trooper Cruz was traveling to [sic] fast to have avoided the crash. [Bonilla] had the right of way at the intersection.

Bonilla's evidence creates a fact issue regarding whether Trooper Cruz complied with Section 546.001 by slowing "as necessary" before proceeding through the intersection. *See* TEX.TRANSP.CODE ANN. § 546.001(2). This evidence, combined with the visual obstruction and Cruz's distraction, creates a fact issue regarding whether Cruz acted with conscious indifference or reckless disregard to the risk of driving through the intersection against the red light. Accordingly, the trial court did not err by denying DPS's plea to the jurisdiction based on sovereign immunity. We overrule DPS's first point of error.

### SOVEREIGN IMMUNITY VIA CRUZ'S OFFICIAL IMMUNITY

Lastly, DPS contends that the trial court erred by denying its jurisdictional plea and summary judgment motions based on sovereign immunity derived from the official immunity of Trooper Cruz.[6] Bonilla counters that he has not sued Trooper Cruz and that official immunity is therefore unavailable to the DPS. This is incorrect. A governmental entity can rely on the

---

[6] DPS asserted both traditional and no-evidence summary judgment motions. Its no-evidence motion presented only one challenge: that Bonilla lacked evidence showing Trooper Cruz was not engaged in an emergency situation. Official immunity is an affirmative defense, however. *Chambers*, 883 S.W.2d at 653. As such, DPS, not Bonilla, had the burden of showing the urgency of the circumstances in support of official immunity. The trial court did not err in denying DPS's no-evidence motion based on official immunity.

11

official immunity of its employee regardless of whether the employee is a party to the suit. *City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex. 1995). Derivative immunity is an affirmative defense; it requires the governmental defendant to establish that its employee performed a discretionary act in good faith and within the scope of his or her authority. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The only one of these elements at issue here is good faith.[7]

The element of good faith must be assessed upon objective legal reasonableness, not the employee's subjective state of mind. *Wadewitz*, 951 S.W.2d at 466. The determination depends here on how a reasonably prudent police officer could, based upon the facts as they appeared to Cruz at the time, assess the need to stop the speeding truck against the risks associated with Cruz's chosen course of action. *Id.* at 467. The "need" aspect of the test refers to the urgency of the circumstances requiring official intervention. *Id.* Need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. *Id.* The "risk" aspect considers countervailing public safety concerns, such as potential injury to bystanders, the possibility that an accident will prevent the officer from reaching the scene of the emergency, the likelihood that harm will occur, and whether such risks, if any, would be clear to a reasonably prudent police officer. *Id.*

The same fact issues that defeat sovereign immunity under the emergency exception likewise defeat derivative immunity. Under the facts adduced by Bonilla, which we must accept

---

[7] DPS argues that Bonilla's assertion that Trooper Cruz was within the course and scope of his DPS employment at the time of the accident is a judicial admission in favor of the "scope of authority" prong of official immunity. We agree. This is precisely the sort of clear, deliberate, and unequivocal statement that properly constitutes a judicial admission. *Regency Advantage Limited Partnership*, 936 S.W.2d at 278.

12

as true for summary judgment purposes, a reasonably prudent police officer could determine that the need to stop the speeding truck in order to prevent an accident was outweighed by a more immediate risk of causing an accident himself by proceeding through the intersection against a red light without yielding at the stop line, particularly in light of Cruz's distraction and sight restriction caused by the building to his right. [A]n officer in a police pursuit must assess both the risk that the suspect will injure a third party *and* the risk that *the officer himself* will injure a third party." [Emphasis in original]. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 583 (Tex. 2000).

Further, DPS did not adduce evidence establishing that Trooper Cruz considered whether any alternative course of action was available to stop the speeding truck. "To establish good faith under *Wadewitz*, [the party urging official immunity is] required to show that [the officer] assessed the availability of alternatives to pursuit as part of balancing the need to pursue and the pursuit's risk to the public." *Clark*, 38 S.W.3d at 588-89 (declining to find good faith, in a police pursuit accident case, because the officer's affidavit did not discuss alternative courses of action); *see also City of Pasadena v. Belle*, 297 S.W.3d 525, 534 (Tex.App.--Houston [14th Dist.] 2009, no pet.)(same). We accordingly overrule DPS's second point of error.

Because we conclude that the trial court did not err by denying the plea to the jurisdiction and summary judgment motions based on sovereign and official immunity, we affirm the judgment of the trial court.

May 30, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

13