

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/2/2015 4:16:34 PM
KEITH E. HOTTLE
Clerk

No. 04-14-00275-CV

Adriana P. **PEREZ**,
Appellant

v.

**WEBB COUNTY,**
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2011CVT000305 D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice
Concurring Opinion by: Marialyn Barnard, Justice
Dissenting Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: June 3, 2015

REVERSED AND REMANDED

In the underlying lawsuit, Adriana Perez sued Webb County for injuries she allegedly sustained when the vehicle she was driving was struck by a marked patrol car driven by Corporal Horacio Yzaguirre of the Webb County Sheriff's Office when he drove through a red light. Webb County filed a motion to dismiss the suit for lack of jurisdiction. The County alleged Yzaguirre's actions at the time of impact were at most negligent, which is insufficient to defeat the County's immunity under the emergency exception to the waiver of immunity. The trial court granted the

**APPENDIX B**

motion, and Perez now appeals. A majority of this panel agrees the judgment should be reversed; however, for different reasons. I write only on the issue of whether Perez raised a fact issue on whether Yzaguirre's actions were taken with conscious indifference or reckless disregard for the safety of others.

## BACKGROUND

The accident occurred on a clear morning on Wednesday, November 3, 2010, at the intersection of Chihuahua Street and Bartlett Avenue in Laredo, Texas. Chihuahua is a straight one-way street going east, and Bartlett is a straight one-way street going north. There is a traffic light at the intersection. At around 8:00 a.m., Perez was driving north on Bartlett with the green light. At about the same time, Yzaguirre, who was the patrol supervisor and a field supervisor, was driving his vehicle east on Chihuahua when he heard over his radio a dispatch "for a domestic call in progress" at a location about seven miles away. Yzaguirre testified he activated his overhead lights and headed in the direction of the call's location. He stated he used his overhead lights and his air horn to move the traffic, but not his siren, as he drove on Chihuahua. When he entered the Chihuahua/Bartlett intersection, Yzaguirre's vehicle collided with Perez's vehicle.

Perez sued Webb County, alleging her injuries were proximately caused by Yzaguirre's conduct. In her petition, Perez asserted Yzaguirre was not on an "emergency call," and, if he was, he did not comply with "applicable law." Perez also asserted Yzaguirre's conduct involved an extreme degree of risk, and he had actual, subjective awareness of the risk his actions posed, "but he proceeded with conscious indifference to the rights, safety and welfare of others, including [Perez]." Therefore, according to Perez, the emergency exception to the waiver of immunity does not apply.

## STANDARD OF REVIEW

We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id.* We construe the pleadings liberally in favor of the plaintiff. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). When evidence is submitted that implicates the merits of the case, as is the case here, our standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c). *Id.* at 228; *see also* TEX. R. CIV. P. 166a(c). The burden is on the governmental unit to present evidence to support its plea. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets this burden, the burden shifts to the nonmovant to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* We take as true all evidence that is favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

A governmental unit is immune from both suit and liability unless its immunity has been waived. *See Tex. Dep't of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex. 2002). Section 101.021(1) of the Texas Tort Claims Act ("TTCA") waives immunity for claims arising from the negligent use of a motor-driven vehicle by a governmental unit's employee. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) (West 2011). However, the governmental unit retains its immunity from suit if one of the exceptions to the waiver of immunity in the TTCA applies. *See, e.g., Garza*, 70 S.W.3d at 806 (State retains immunity from suit if the exception in section 101.056 for discretionary acts and omissions applies). For example, even in situations where immunity may generally be waived, such as through the negligent operation or use of a motor vehicle, statutory

- 3 -

exceptions for emergencies may override the immunity waiver. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006).

Here, the City asserted its entitlement to immunity under the "emergency exception" to the waiver of immunity contained in the TTCA. *See Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 238 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Under the emergency exception, the TTCA "does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others . . . ." TEX. CIV. PRAC. & REM. CODE § 101.055(2). Assuming, without deciding, that Yzaguirre was responding to an emergency call or reacting to an emergency situation, the evidence raises a fact issue on whether his actions were taken with conscious indifference or reckless disregard for the safety of others.

## RECKLESS DISREGARD

The laws regarding the operation of an emergency vehicle are located in the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 546.001-.006 (West 2011 & Supp. 2014); *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.); *City of Laredo v. Varela*, No. 04-10-00619-CV, 2011 WL 1852439, at *1-2 (Tex. App.—San Antonio May 11, 2011, pet. denied) (mem. op.); *City of San Antonio v. Riley*, No. 04-09-00162-CV, 2009 WL 2045231, at *1 (Tex. App.—San Antonio July 15, 2009, no pet.) (mem. op.); *accord Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 837–38 (Tex. App.—Corpus Christi-Edinburg 2011, no pet.).

Transportation Code section 546.005 provides that the driver of an emergency vehicle must drive "with appropriate regard for the safety of all persons" and he is not relieved of "the

- 4 -

consequences of reckless disregard for the safety of others." TEX. TRANSP. CODE ANN. § 546.005. A person commits the offense of reckless driving if "the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a).

Interpreting the uncodified predecessor of section 546.005, the Texas Supreme Court held that this provision "imposes a *duty* to drive with due regard for others by avoiding negligent behavior, but it only imposes *liability* for reckless conduct." *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998). This requires more than a momentary judgment lapse—it requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury. *Id.* at 430; *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.— Houston [1st Dist.] 2008, no pet.). In *Martin*, the court noted the Texas legislature specifically excluded operation of emergency vehicles in emergency situations from the general waiver of immunity for negligent operation of vehicles contained in the TTCA and held, "[w]ere we to . . . impose liability generally on emergency vehicle operators for mere negligence, we would render meaningless the portion of section 101.055 that specifically excludes emergency vehicle operators from the waiver of immunity for negligence." *Martin*, 971 S.W.2d at 430.

Thus, a governmental entity is liable for damages resulting from the emergency operation of an emergency vehicle if the operator acted recklessly; that is, if the operator "committed an act that the operator knew or should have known posed a high degree of risk of serious injury" but did not care about the result. *Id.*; *Smith*, 126 S.W.3d at 545; *see also Hartman*, 201 S.W.3d at 672 n.19 ("conscious indifference" and "reckless disregard" have been interpreted to require proof that a party knew the relevant facts but did not care about the result).

As a general rule, "[a]n operator [of a vehicle] may not drive at a speed greater than is reasonable and prudent under the circumstances then existing." TEX. TRANSP. CODE ANN. § 545.351(a). However, "[t]he regulation of the speed of a vehicle under this subchapter does not

apply to: (1) an authorized emergency vehicle responding to a call; [or] (2) a police patrol . . . ." *Id.* § 545.365(a)(1), (2). The operator of an authorized emergency vehicle may "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation." *Id.* § 546.001(2). The operator of an authorized emergency vehicle also may "exceed a maximum speed limit, [with an exception not applicable here], as long as the operator does not endanger life or property." *Id.* § 546.001(3).

Because the County raised the emergency exception under section 101.055(2), Perez had the burden to raise a fact issue on whether Yzaguirre was reckless. Perez contends Yzaguirre recklessly failed to comply with the applicable laws and ordinances by (1) travelling at thirty-six miles per hour in a thirty-mile-per-hour zone just prior to the impact; (2) failing to apply his brakes or slow down as he entered the Chihuahua/Bartlett intersection against the red light; (3) failing to engage his siren as required; and (4) violating the applicable provisions of both the Texas Transportation Code and the Sheriff's office's standard operating procedures.

Yzaguirre was the only witness at the hearing on Webb County's motion to dismiss. Yzaguirre explained he heard the dispatch, and he knew the officer assigned to the area of the call was busy with another case about ten to fifteen miles away from the location of the disturbance. Yzaguirre said he was only about seven miles away. Yzaguirre said a call such as the one here is classified as "domestic violence" and is "high priority" because "[i]t changes quickly, needs immediate attention due to the fact that it was an assault in progress, so you respond as quickly as possible."

Yzaguirre testified that as he approached the intersection located before the Chihuahua/Bartlett intersection ("the Malinche intersection"), traffic was in the left lane; therefore, he started to change lanes, "almost came to a complete stop," and moved to the right lane. He then accelerated as he approached the Chihuahua/Bartlett intersection. Yzaguirre said he slowed,

looked left and right, used his air horn, and, "using due caution," proceeded through the Chihuahua/Bartlett intersection against the red light. He believed the intersection was clear as he approached, and he saw no vehicles in the intersection when he looked left and right.

Yzaguirre testified about his approach to the Chihuahua/Bartlett intersection as follows:

> Traffic had started edging over. The traffic on the left lane had started moving over and slowing down. I was on the right lane accelerating trying to get through that intersection as quickly as possible without causing injuries or anything. But as traffic kept moving, they yield.

> They gave me a clear sight on Bartlett to my left. When I looked to my right, I had my blind spot. When I looked to the left again, I was approaching using my air horn as an audible to get to the intersection. And when I turned back to get to the intersection, [Perez's vehicle] appeared in my line of sight, and I braked and struck [her vehicle] on the right-rear tire.

Yzaguirre admitted that he not only did not see Perez before he entered the Chihuahua/Bartlett intersection, but he was *unable* to see whether vehicles were approaching from the right. Nonetheless, Yzaguirre proceeded through the intersection against the red light despite being aware of his blind spot. Video from Yzaguirre's dashboard camera indicates that as one drives on Chihuahua while approaching Bartlett, on the right-hand corner of the intersection a building and bushes sit a few feet back from the road that obstruct the view of drivers on Chihuahua.

Yzaguirre also testified he activated his air horn three or four times before entering the intersection. Yzaguirre said he did not activate his siren because it did not work simultaneously when he sounded his air horn. Yzaguirre explained that, generally speaking, every time he hit the air horn, the wailing siren would turn off, and because he was using the air horn constantly trying

to get through traffic, the wailing siren was not sounding.[1] "I was using my air horn faster than my siren was going. So it was constant on the air horn."

Yzaguirre also agreed that (1) accelerating into an intersection, (2) failing to slow as necessary at a red light, and (3) proceeding into an intersection on a red light without first ensuring traffic was yielding posed a high degree of risk of serious injury. He also answered "true" to the question: "Just because you see people yielding to one side of you doesn't mean that you get to presume that the people on the other side of the blind intersection are yielding to you, true?"

In addition to his own recollection of what happened, Yzaguirre was questioned about the information taken from his vehicle's dashboard camera. The camera was equipped with a screen that shows a variety of "triggers," which indicate when he activated his siren or lights, and when he braked. The triggers are wired directly into the car's computer system and show real time. The camera also shows GPS information about the vehicle's speed, but because the GPS is not wired into the car, there is a slight time delay, which means the speed shown on the screen could, in real-time, be slower or faster than the speed at which he was travelling. The GPS indicated Yzaguirre slowed to about sixteen miles per hour at the Malinche intersection. The triggers indicate he had turned on his emergency lights, used his air horn three or four times, and applied his brakes at the timer mark of 08:17:23 as he approached the Chihuahua/Bartlett intersection. His foot was still on the brakes at 08:17:24. The triggers indicate his foot was off the brake at 08:17:25, which was just before he entered the intersection. Yzaguirre hit Perez's vehicle in the intersection at the 08:17:26 mark. The GPS showed he was travelling at about thirty-six miles per hour at the 08:17:25 mark. Perez alleges the speed limit is thirty miles per hour.

---

[1] Yzaguirre explained that the wailing siren is a constant sound. He said his vehicle was not set up to run both the wailing siren and the air horn at the same time.

This evidence raises a material fact issue on whether Yzaguirre acted with reckless disregard for the safety of others, and that he knew or should have known his actions posed a high degree of risk of serious injury, but he did not care about the result. The undisputed evidence establishes Yzaguirre had his vehicle's lights activated and he was sounding his air horn as he drove into both the Malinche intersection and the Chihuahua/Bartlett intersection. The information from his dashboard camera establishes he was braking, almost came to a complete stop, and had slowed to about twenty-three miles per hour just before entering the Malinche intersection. Still braking when he entered the Malinche intersection, he was travelling at about sixteen miles per hour. After driving through the Malinche intersection, the dashboard camera information indicates Yzaguirre braked before entering the Chihuahua/Bartlett intersection, but then accelerated to about thirty-six miles per hour when he entered the Chihuahua/Bartlett intersection. By his own admission, Yzaguirre entered the Chihuahua/Bartlett intersection despite knowing he had a blind spot that blocked his view of Perez before he entered the intersection. Yzaguirre admitted he had, in the past, stopped for traffic failing to yield at an intersection as he attempted to drive through a red light; and he agreed he should brake as necessary if he had a blind spot blocking his view of oncoming traffic and had time to stop when driving through a red light.

## CONCLUSION

Viewing the evidence in the light most favorable to Perez, this evidence indicates more than a momentary lapse in judgment; instead, it raises a fact issue on whether Yzaguirre's actions reflected conscious indifference or reckless disregard for the safety of others. *Compare Tex. Dep't of Pub. Safety v. Bonilla*, No. 08-13-00117-CV, 2014 WL 2451176, at *6 (Tex. App.—El Paso May 30, 2014, pet. filed) (evidence that officer did not remove his foot from his vehicle's accelerator pedal until .5 seconds before impact; he was distracted by turning on his in-car camera as he entered the intersection; a building to his right, the direction from which Bonilla was

- 9 -

traveling, created a visual obstruction; and he did not use his vehicle's siren created a fact issue regarding whether officer acted with conscious indifference or reckless disregard to the risk of driving through the intersection against the red light), *with City of Pasadena*, 260 S.W.3d at 99-100 (evidence did not raise fact issue on whether officer's actions were taken with conscious indifference or reckless disregard despite entering a blind intersection on a red light because evidence showed officer had activated his emergency lights and siren, and slowed down before proceeding through intersection).

Because Perez raised a fact question about the applicability of the emergency exception to the waiver of immunity, we reverse the trial court's judgment dismissing the case for lack of jurisdiction, and remand for further proceedings.

Luz Elena D. Chapa, Justice