**Opinion issued June 9, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-01020-CV

_____

**HARRIS COUNTY, Appellant**

**V.**

**A.D. AND LISA DURANT, Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-50885**

---

## MEMORANDUM OPINION

A fifteen-year-old pedestrian was struck by a car one morning while crossing the road on her way to school. She sued the driver of the car and Harris County, which maintains and operates the school-speed-zone signs with flashing beacons that alert drivers to slow their speed. The County filed a plea to the jurisdiction and

moved for a traditional and no-evidence summary judgment, arguing it retained governmental immunity from suit. The trial court denied the County's plea and motions. We reverse.

## Background

Before classes started on the morning of March 23, 2022, A.D. was struck by a car and injured while crossing the road near Dekaney High School. The car, driven by Elvis Hernandez, was traveling between thirty and forty miles per hour when it struck A.D. A member of the school staff who witnessed the accident reported that A.D. was walking with her head down, looking at what may have been a cell phone, and not keeping an eye on oncoming traffic as she crossed the road.[1] A.D. acknowledged that she saw Hernandez's car approaching and believed she had enough time to cross the road. Hernandez was not cited.

The time of the accident is disputed. A.D. alleges that she was struck at 6:44 a.m., which is the time listed on the school district police department's accident report. The County alleges the accident may have happened earlier, pointing to Hernandez's deposition testimony that he struck A.D. at 6:20 a.m. and a different crash report listing the same "crash time." What is undisputed, however, is that the accident occurred when it was dark, before the school-zone flashers were activated.

---

[1] The same witness estimated Hernandez's speed to be forty to fifty miles per hour. When the school speed zone is not in effect, the speed limit is thirty-five miles per hour.

2

It is also undisputed that the County programmed the flashers to activate at 6:50 a.m. When activated, the flashers signal drivers to reduce their speed in the school zone.

A.D. and her guardian, Lisa Durant (whom we will refer to collectively as A.D.), asserted claims against the County under the Texas Tort Claims Act (TTCA).[2] *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. The petition alleges that the school-zone flashers are traffic-control devices which the County failed to properly maintain by programming them to start too late. In support, A.D. cites regulations for school speed zones in the Texas Administrative Code, which provide that the "[i]ntervals of operation" for signed zones "[g]enerally . . . should be in effect . . . from approximately 45 minutes before school opens until classes begin." 43 TEX. ADMIN. CODE § 25.22(d)(3)(A)(i). Although Dekaney's "school hours" were from 7:20 a.m. to 2:40 p.m., A.D. argues the County was legally required to activate the school-zone flashers "approximately 45 minutes" before student drop-off started at 6:50 a.m. And had the flashers been properly timed, Hernandez would have known to reduce his speed and likely could have avoided hitting A.D.

The County answered and filed a combined plea to the jurisdiction and traditional and no-evidence motion for summary judgment on governmental immunity. The County argued that it retained governmental immunity from suit

---

[2] A.D. and Durant also sued Hernandez, who is still a party in the trial court but not on appeal, and three other governmental defendants, which she has nonsuited.

because the decision when to operate school zones is discretionary and the school-zone flashers were operating as intended and without any mechanical or other operational defect around the time of the accident.

An employee of the County's engineering office testified by affidavit that the school-zone flashers are programmed and monitored through "the web-based Glance system," which has been in place "for multiple years." He explained:

> The Glance system is used to program each school zone flasher to flash at a specified time based on the start and end times of the school's calendar. Additionally, the Glance system remotely monitors the operational status of all components of each school zone flasher (*e.g.*, beacon/lamp failure, voltage failure, accidental knocking down of the flasher by a motorist, and communications failure). The Glance system sends alerts to Harris County Engineering whenever there is a deficiency with any of the school zone flashers. Upon receipt of each alert, Harris County Engineering reviews the alert and if the flasher is absent, has a malfunction, or has some other condition needing repair, Harris County Engineering will dispatch a maintenance technician to the flasher to assess the issue and coordinate necessary repairs. Even if no issue is reported by the Glance system, Harris County inspects each school zone flasher at least once a year.

The school-zone flashers at issue were scheduled to operate on weekdays from 6:50 a.m. to 8:20 a.m., and according to the employee, "had no condition or malfunction negatively affecting their programmed operation." The County also submitted maintenance and operational records for the flashers, along with guidance from the Texas Transportation Institute, prepared in cooperation with the Texas Department of Transportation and the Federal Highway Administration, recommending flashers

4

operate from approximately thirty minutes before until five minutes after classes begin.[3]

A.D. responded that although the County may have discretion in deciding whether to install the school-zone flashers in the first instance, the County's discretion does not extend to the flashers' timing. In A.D.'s view, once the County elected to install school-zone flashers near Dekaney High School, the County assumed a non-discretionary duty to operate the flashers with reasonable care, in accordance with regulations and known student arrival times.[4] Further, she argues the County's failure to activate the flashers before the student drop-off period began at 6:50 a.m.—despite a clear statutory directive and drop-off patterns—triggers the waiver of immunity in Sections 101.022(b) and 101.060(a)(2). *See* TEX. CIV. PRAC. & REM. CODE §§ 101.022(b) (regarding "the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section

---

[3] The recommendation is found in Appendix A to the document entitled "Guidelines for Traffic Control for School Areas," which reflects that it was prepared in cooperation with the Texas Department of Transportation and the Federal Highway Administration and published in February 2009.

[4] After the County filed its jurisdictional plea and summary-judgment motions, A.D. filed a third amended petition asserting a negligent-implementation claim. She alleges that while courts have "held that the regulation of traffic is a governmental function that falls under the definition of a discretionary decision," the County is subject to suit because "decisions incidental or related to the implementation of a discretionary or policy-formulated decision are not immune from liability."

101.060"), .060(a)(2) (excluding claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device" from immunity waiver "unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice").

The trial court denied the County's jurisdictional plea and summary-judgment motions without explanation. The County appealed.

## Governmental Immunity

The County argues that the trial court erred in denying its plea to the jurisdiction and motions for summary judgment because A.D.'s claims, based on the school-zone flashers being activated later than legally required, do not fall within the TTCA's limited waiver of governmental immunity.

### A.    Standard of review

A plaintiff has the burden to show the trial court's subject-matter jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). That burden includes an obligation to show a waiver of governmental immunity in suits against counties. *See Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002); *see also Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Parties may raise a claim of immunity in a plea to the jurisdiction or a motion for traditional or no-evidence summary judgment. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review

6

the trial court's ruling de novo. *See Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) (de novo review of ruling on plea to the jurisdiction).

When, as here, a plea to the jurisdiction challenges jurisdictional facts, a trial court's review "mirrors that of a traditional summary judgment motion."[5] *Tex. Dep't of Pub. Safety v. Gaible*, No. 01-22-00405-CV, 2023 WL 2799069, at *2 (Tex. App.—Houston [1st Dist.] Apr. 6, 2023, no pet.) (mem. op.) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)). "We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* If the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* But if the evidence raises a fact issue about jurisdiction, the plea cannot be granted, and a factfinder must resolve the issue. *Id.*

## B.     Governing law

Although her petition characterizes her claim against the County as involving "negligence," A.D. relies on TTCA provisions governing premises-defect claims. Under Section 101.021, a governmental defendant may be liable (and thus immunity is waived) for personal injury "caused by a condition or use of . . . real property,"

---

[5]     The County filed a combined plea to the jurisdiction and traditional and no-evidence motion for summary judgment. Our analysis concerns the plea to the jurisdiction, but the summary-judgment motions are reviewed under the same standard. *See Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017) (de novo review); *see also Town of Shady Shores*, 590 S.W.3d at 551–52 (summary-judgment standard).

7

i.e., premises-defect claims. TEX. CIV. PRAC. & REM. CODE §§ 101.021(2) (waiving immunity from liability); .025 (waiving immunity from suit to the extent of liability created by the TTCA). The licensee standard generally governs such claims. *See id.* § 101.021(2); *see also Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 385–86 (Tex. 2016) (discussing the "heightened standard for premises defects"). However, claims arising from the absence, condition, or malfunction of a traffic or road sign, signal, or warning device" trigger an alternate set of TTCA standards. *See* id. §§ 101.022(b) (exempting from licensee standard claims arising from "duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060").

Relevant here, Section 101.060(a)(2) excludes from the TTCA's waiver of immunity claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device *unless* the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2) (emphasis added). The Supreme Court of Texas has found a waiver of immunity under Section 101.060(a)(2) "only in those situations in which the sign or signal was either (1) unable to convey the intended traffic control information, or (2) conveyed traffic control information other than what was intended." *Tex. Dep't of Transp. v. Garza*, 70 S.W.3d 802, 807 (Tex. 2002); *see also Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339,

341–42 (Tex. 1998) (examining history of the TTCA's passage and concluding that "the waiver of immunity . . . is not, and was not intended to be, complete").

Additionally, the County retains governmental immunity from claims based on its (1) failure "to perform an act that [it] is not required by law to perform," or (2) "decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the [County's] discretion[.]" TEX. CIV. PRAC. & REM. CODE § 101.056. In other words, the County is immune from suits arising from its discretionary acts and omissions. *See Garza*, 70 S.W.3d at 806; *see also Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (observing purpose of excepting discretionary functions from waiver of immunity is to avoid judicial review of government policy decisions and noting distinction between negligent formulation of policy and negligent implementation of policy).

## C. No condition of the school-zone flashers required correction

In its plea to the jurisdiction, the County argued that it retained immunity because the school-zone flashers did not have any mechanical or operating defect around the time of the accident and, thus, there was no "condition" or "malfunction" of a "traffic or road sign, signal, or warning device" that required correction under Section 101.060(a)(2). A.D. responds that the "condition" or "malfunction" of the

9

school-zone flashers was their unreasonably timed activation at 6:50 a.m., which coincided with, rather than preceded, student drop-off.[6]

To fall within the waiver of immunity under Section 101.060(a)(2), the alleged condition of the sign cannot be "just any condition, but only something 'wrong' with the traffic sign or signal such that it would require correction by the State after notice." *Garza*, 70 S.W.3d at 807. As part of its jurisdictional plea, the County presented evidence that school-zone flashers were present near Dekaney High School in the direction of Hernandez's travel, programmed to activate at 6:50 a.m., and had "no condition or malfunction negatively affecting their programmed operation" around the time of the accident. Maintenance and operations records corroborated the affidavit testimony. The County's evidence thus established the school-zone flashers functioned as programmed and conveyed information as intended—warning drivers to reduce their speed in the school zone around Dekaney High School beginning at 6:50 a.m.

That the school-zone flashers were operating and conveying information as intended makes this case different than others in which courts have concluded that a

---

[6] A.D. has also characterized this alleged condition as a "special defect," which is a condition the TTCA likens to roadway excavations or obstructions and involves a different analysis. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(b) (exempting premises-defect claims that arise from "special defects" from licensee standard). We need not consider this issue because A.D. conceded at oral argument that she does not contend the school-zone flashers fit within the same class as an excavation or obstruction.

"traffic or road sign, signal, or warning device" suffered a condition or malfunction within the meaning of Section 101.060(a)(2). For example, in *Lorig v. City of Mission*, trees and branches obstructed a stop sign, causing a car accident. 629 S.W.2d 699, 700 (Tex. 1982) (per curiam). The Supreme Court of Texas held that the obstruction from view was a condition under the TTCA because it prevented the stop sign from conveying the intended traffic-control information to motorists. *Id.* at 706.

In *Alvarado v. City of Lubbock*, a speed-limit sign erroneously posted a limit of fifty-five miles per hour when the actual speed limit, set by Lubbock city ordinance, was fifty miles per hour. 685 S.W.2d 646, 647 (Tex. 1985). Because the sign posted an inaccurate speed limit and thus conveyed traffic-control information other than what was intended, the case involved a condition of a traffic sign under Section 101.060(a)(2). *Id.* at 648–49.

And in *Sparkman v. Maxwell*, a case on which A.D. relies, the city modified a standard three-light signal by placing a metal template with arrow-shaped openings in front of the red, yellow, and green lenses. 519 S.W.2d 852, 854 (Tex. 1975). Although the red arrow was intended to signal motorists to stop, it confused them and caused them to turn left on the red arrow, which in turn caused a car accident. *Id.* at 856. Because the red arrow conveyed to some motorists that they should proceed when the city intended them to stop, the signal conveyed the wrong

11

traffic-control information and thus presented a condition within the TTCA. *Id.* at 857–58.

But here, the County intended the school-zone flashers to activate at 6:50 a.m., and the flashers did so. That is, the flashers conveyed the intended traffic-control information, alerting drivers to slow their speed in the school zone beginning at 6:50 a.m. A.D. did not present any contrary evidence raising a fact issue as to the mechanical operation of the flashers or the information conveyed by them. Consequently, unlike *Lorig*, *Alvarado*, and *Sparkman*, there was no condition or malfunction that would effect a waiver of the County's governmental immunity under Section 101.060(a)(2).

This case is more like *Garza*, where a sign posting a forty-five miles-per-hour speed limit, which the plaintiffs alleged was too high for the location but was the correct speed limit imposed by law, did not have a condition within the meaning of Section 101.060(a)(2). *See* 70 S.W.3d at 807. The court explained that the plaintiffs' real complaint was that "TxDOT improperly set the speed limit in the area at forty-five miles per hour"; "the posted [speed-limit] sign is only an indicator of the legal speed limit." *Id.* at 808. In other words, the source of the alleged problem was "the setting of the legal speed limit, not the sign displaying that limit." *Id.*

The same is true here. At most, A.D. has alleged that the County improperly set the school-zone flashers to start flashing too late, making the source of the alleged

12

problem the programming of the school-zone flashers, not the flashers themselves. Consequently, A.D. has not established that the school-zone flashers had a condition within the meaning of the TTCA and thus there is no waiver of governmental immunity under Section 101.060(a)(2). *See id.*

**D.      The County has discretion on the school-zone flashers' hours of operation**

We consider next A.D.'s contention that governmental immunity is waived because the County had a legal obligation to program the school-zone flashers to start flashing before student drop-off began at 6:50 a.m. Absent such an obligation, the TTCA's discretionary-function exception forecloses an immunity waiver. *See* TEX. CIV. PRAC. & REM. CODE § 101.056 (TTCA waiver of immunity does not apply to claim based on governmental unit's failure to perform act not required by law or the performance of which the law leaves to discretion); *State v. Miguel*, 2 S.W.3d 249, 250–51 (Tex. 1999) (per curiam) (State's immunity is retained for claims based on its discretionary decisions). Whether a governmental activity is discretionary and within the exception is a question of law. *Miguel*, 2 S.W.3d at 250–51.

It is well settled that decisions about road design and safety features are discretionary policy decisions. *See id.* at 251. A.D. contends her claim falls outside this established principle because the rules for speed zones in the Texas Administrative Code create a mandatory duty to operate school-zone flashers at

13

certain intervals. *See* 43 TEX. ADMIN. CODE § 25.22. Regarding school speed zones, the Code instructs:

> Reduced speed limits should be used for school zones during the hours when children are going to and from school. Usually such school speed zones are only considered for schools located adjacent to highways or visible from highways. Pedestrian crossing activity should be the primary basis for reduced school speed zones. However, irregular traffic and pedestrian movements must also be considered when children are being dropped off and picked up from school.

*Id.* § 25.22(d)(1). Signs shall be used to signal the school zone, including "flashing beacons" with the "WHEN FLASHING sign" to "identify the periods the school speed limit is in force." *Id.* § 25.22(d)(2)(A). As to "Intervals of operation," the Code states:

(A)    *Generally*, the zones indicated on the signs *should be* in effect only during the following specified intervals:

    (i)    from *approximately* 45 minutes before school opens until classes begin;

    (ii)    from the beginning to the end of the lunch period; and

    (iii)    for a 30 minute period beginning at the close of school.

(B)    The intervals of operation of the flashing beacons on the School Zone Speed Limit Assembly may be extended or revised for school events as mutually agreed upon by the school district and the entity responsible for the operation of the flashing beacons. In this case, the flashing beacons should only be operated when there is an increase in vehicular activity or pedestrian traffic in and around the roadway associated with the school event.

*Id.* § 25.22(d)(3) (emphasis added).

A.D. points to the language providing for an interval from "approximately 45 minutes before school opens until classes begin" as the source of the alleged mandatory duty to activate the school-zone flashers before student drop-off began at 6:50 a.m. Specifically, she asserts that the school must be considered open when student drop-off began at 6:50 a.m.,[7] and thus the County had to activate the flashers forty-five minutes before then. But under the settled rules of statutory construction that apply to regulations and afford words their ordinary meaning, the rule's emphasized text plainly conveys the County's discretion to determine the hours of operation for the school zone around Dekaney High School. *See Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (courts interpret statutory provisions and administrative rules using the same principles of statutory construction); *see also* TEX. GOV'T CODE § 312.002 (words shall be given their ordinary meaning).

"Generally," a term that frames the intervals of operation, is an adverb meaning in most cases, usually, commonly, or typically, and thus suggests the rule

---

[7] We note the rule ties the interval of operation to the time school "opens" without defining when that occurs, and A.D. has taken more than one position on the issue in these proceedings. *See* 43 TEX. ADMIN. CODE § 25.22(3)(d)(A)(i). In her trial-court pleadings, she asserted that the flashers had to activate at 6:35 a.m., forty-five minutes before classes began at 7:20 a.m. On appeal, however, she contends the school must be considered open when student drop-off began at 6:50 a.m., requiring the flashers to activate at 6:05 a.m. We need not decide which position is correct because our conclusion that the decision is discretionary remains the same.

applies most of the time but not all of the time. *See* "Generally," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/generally (accessed June 2, 2026). Similarly, "should," as used in reference to when the zones indicated on the signs will be in effect, expresses a recommendation, not a mandate. The Code itself defines "should" to mean "[a]dvisable but not mandatory." 43 TEX. ADMIN. CODE § 25.20(10).[8] And finally, "approximately," as used in the subsection for the morning interval, is used to convey that "a stated number, amount, or value is an approximation," and is synonymous with terms like "roughly," "about," and "around." *See* "Approximately," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/approximately (accessed June 2, 2026).

Considering the use of several terms that convey discretion and approximation rather than mandates and specificity, we disagree that the Code created a legal obligation to activate the school-zone flashers at a fixed time, i.e., forty-five minutes before student drop-off.

---

[8] The "should" definition further provides, "[A]ny reason for not following the instruction shall be supported by sound engineering judgment." 43 TEX. ADMIN. CODE § 25.20(10). This clause does not compel a conclusion that the hours the school-zone flashers operate is mandatory rather than discretionary. To the contrary, an act is discretionary if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment. *See, e.g.*, *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). And as we explain, the Code does not eliminate the County's discretion in setting the hours of operation for the school-zone flashers.

In the alternative, A.D. asserts that even if the County could decide how long to operate the flashers within an "approximately" 45-minute window, it had no discretion to activate the flashers zero minutes before 6:50 a.m. because the Code required activation "*before* school opens." *See* 43 TEX. ADMIN. CODE § 25.22(d)(3)(A)(i) (emphasis added). The rule does not limit the County's discretion in this way.

The Code advises on *maximum* intervals of operation rather than the minimum intervals A.D. suggests. Read as a whole, the Code expresses an intention to give entities charged with creating and enforcing school speed zones flexibility to manage irregular traffic and pedestrian movements when children are being dropped off and picked up from school while, at the same time, restricting the flow of traffic as minimally as possible. *See id.* §§ 25.21, .22(d).

The Code states that the advisable intervals of operation should be in effect "*only*" during the stated periods. *Id.* § 25.22(d)(3)(A) (emphasis added). "Only" frames the outer limits of the flashers' operational window; that is, it creates maximum intervals of operation. Thus, taking A.D.'s assertion that school opened when school drop-off began at 6:50 a.m., the County had discretion to operate the flashers, *at longest*, from forty-five minutes before then until classes began, which

17

was from 6:05 a.m. until 7:20 a.m. But the Code does not mandate when, within that window, the County must activate the flashers.[9]

Reading the Code restrictively in this manner, as setting maximum school-zone hours, is consistent with other provisions that limit extending school-zone hours. *See id.* § 25.22(3)(B) (allowing extension of school-zone hours for school events "only" when there is an increase in vehicular activity pedestrian traffic in the area). In contrast, A.D.'s interpretation would require us to not just ignore the several discretionary terms used in the Code but also read "only" out of the regulation; that is, we would have to read the Code as mandating that "the zones indicated on the signs should be in effect during the . . . specified intervals." *Id.* § 25.22(3)(A). This we cannot do. *See Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491–92 (Tex. 2017) (instructing that courts should give each word in a statute meaning and not rewrite statutes under the guise of interpreting them).

---

[9] The County presented evidence that it programmed the school-zone flashers in accordance with guidelines from the Texas Transportation Institute—issued in cooperation with Texas Department of Transportation and the Federal Highway Administration—providing that the "zones indicated on the [school-zone flashers] should be in effect *only* during [certain] specified intervals," and as relevant here, "from *approximately* 30 minutes before and 5 minutes after classes begin." (emphasis added). This again indicates that the timing of the flashers is discretionary.

We conclude instead that the establishment of hours of operation for the school-zone flashers is a discretionary decision for which the TTCA does not waive immunity. *See City of Midland v. Sullivan*, 33 S.W.3d 1, 15 (Tex. App.—El Paso 2000, pet. dism'd w.o.j.) (observing governmental unit's decision to establish a school zone and its hours of operation are discretionary acts); *see also* TEX. CIV. PRAC. & REM. CODE § 101.056 (TTCA waiver of immunity does not apply to a claim based on "the failure of a governmental unit to perform an act that the unit is not required by law to perform").

## E.    A.D.'s negligent-implementation theory fails

A.D. argues that even if the decision when to activate the school-zone flashers is discretionary, the County's governmental immunity is still waived because it negligently implemented its decision. Negligent implementation is not a separate theory of liability under the TTCA. *Fraley v. Tex. A & M Univ. Sys.*, 664 S.W.3d 91, 101 (Tex. 2023). Instead, it is a means to avoid the Act's discretionary-function exception that we have concluded retains the County's immunity from A.D.'s premises-defect claim. *Id.*

In support, A.D. cites *Sullivan*, wherein the El Paso Court of Appeals concluded that the City's failure to adjust the activation time of school-zone flashers to account for "zero hour" classes beginning earlier than the standard schedule was not a discretionary act but rather the negligent implementation of an existing safety

19

measure and, therefore, actionable. *See* 33 S.W.3d at 14–15. *Sullivan* is distinguishable. There, the city had a policy of activating school zones thirty minutes before classes started but failed to update the posted time periods on school-zone signs after its local school district implemented "zero hour" classes that moved up students' arrival to school. *Id.* at 5–6. The appellate court remanded the case to the trial court, stating that, "[w]hile the City's decision to establish a school zone and its hours of operation are certainly discretionary acts," the plaintiffs' "allegations related to the failure of the City to update the school zone signs in accordance with its own policy and prior determination state[] a claim for negligent implementation of a discretionary decision." *Id.* at 15.

Here, there is no evidence or allegation that the County negligently failed to update the activation of school zone flashers in a manner unconnected to the school start time. To the contrary, the County presented evidence that the school-zone flashers were operating as intended, which A.D. did not rebut. A.D.'s complaint is about the County's policy in the first instance, not its implementation, and thus her negligent-implementation theory does not save her claim from the County's assertion of governmental immunity.

## Conclusion

For all these reasons, we conclude the trial court erred in denying the County's plea based on governmental immunity. We reverse the trial court's order denying

20

the plea to the jurisdiction and render judgment dismissing the claims against the County for lack of subject-matter jurisdiction.


                                        Andrew Johnson
                                        Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.